## *In re* TYLER, Petitioner.

### ORIGINAL.

No. 17.   Original.   Argued April 4, 1893.—Decided April 24, 1893.

Property within a State, which is in the possession of a receiver by virtue of his appointment as such by a Circuit Court of the United States, is not subject to seizure and levy under process issuing from a court of the State to enforce the collection of a tax assessed upon its owner under the laws of the State.

The exclusive remedy of the State tax collector in such case is in the Circuit Court which appointed the receiver, where the question of the validity of the tax may be heard and determined, and where the priority of payment of such amount as may be found to be due which is granted by the laws of the State will be recognized and enforced.

The writ of *habeas corpus* is not to be used to perform the office of a writ of error, or of an appeal.

When no writ of error or appeal will lie, if a petitioner for a writ of *habeas corpus* be imprisoned under a judgment of a Circuit Court which had no jurisdiction of the person or of the subject matter, or authority to render the judgment complained of, then relief may be accorded by writ of *habeas corpus*.

THIS was a petition for a writ of *habeas corpus* filed by leave of court March 7, 1893, by M. V. Tyler, sheriff of the county

of Aiken, South Carolina, representing that he is unjustly detained by G. I. Cunningham, United States marshal for the District of South Carolina, to which the marshal made return upon a rule laid upon him to do so. The facts appearing from the petition, return, and accompanying documents are as follows:

On December 5, 1889, in the case of *Bound* v. *The South Carolina Railway Company*, Daniel H. Chamberlain was appointed receiver of the railway company by an order of the Circuit Court of the United States for the District of South Carolina, with the usual powers of receivers in such cases, and all of the property of the company was placed under his care and management and protected by injunction. On March 7, 1892, the receiver filed a bill in equity in that court against the treasurers and sheriffs, eighteen in number, in the counties through which the railroads in his possession passed, alleging that the treasurers were about to issue tax executions and the sheriffs about to levy and seize thereunder property of the railroad company for the taxes for the fiscal year beginning November 1, 1890. The bill alleged that the taxes for that fiscal year were unconstitutional and illegal in part, upon various grounds set forth therein in detail, and involving an alleged wrongful and illegal raising of the valuation of the state board of equalization; that the levy and sale of the road would cause irreparable injury, preventing the receiver from carrying on the business of the railroad as a common carrier; that there was no adequate remedy at law; that a multiplicity of suits would be necessary to protect his rights if he sued at law; and that the levy would cast a cloud upon the property; and prayed for an injunction against the issue and levy of the tax warrants in question. The bill further set forth that the receiver had tendered without condition the taxes admitted to be due and that the same had been refused by the county treasurers, but pending the motion for preliminary injunction the defendants were permitted to waive this refusal and receive the amounts tendered, which was accordingly done. On April 8, 1892, the court, after full hearing, issued the injunction prayed for, and the defendants having answered, it was provided by order of

court that the testimony should be taken in due course in time for final hearing at the November term, 1893.

For the fiscal year beginning November 1, 1891, the receiver made a return of the property for taxes as provided by law, similar to the return he had made the year previous, and the state board of equalization having again proceeded in the matter of the assessment and valuation as before, the receiver again tendered the taxes calculated on the valuation as returned, and not upon the valuation as assessed. The amounts so tendered were received, but tax executions or warrants were issued by the county treasurers, for the difference between the return and the assessment, and on February 4, 1893, levy was made by Tyler, sheriff of Aiken County, upon property in the hands of the receiver at Aiken. There were apparently two warrants, one for $1215.14 and the other for $466.40, and the value of the property levied on was $9500. That property consisted of fourteen freight cars, five belonging to the South Carolina Railway, one to another South Carolina company, and eight to various railroad companies of other States. All of the cars were marked with the initials of the corporations to which they belonged, and most of them with the names of the owners in full. Eight of the cars were loaded with merchandise belonging to shippers. The cars were chained to the track of the South Carolina Railway Company alongside of the only freight depot of the company in Aiken, and effectively stopped traffic through that depot for a period of twelve days. On Monday, February 6, 1893, the receiver filed his petition in the Circuit Court of the United States, alleging the illegality of the taxes for which the warrants were issued, in substantially the same terms as in the bill of the year before, and setting forth that he had paid the taxes admitted to be due; that the court in the previous case had decided a tax in all respects similar to be illegal; and, after disclaiming any intention to delay or escape the payment of the taxes due, and alleging that he was only doing his duty as an officer of the court, prayed that the treasurer and sheriff be enjoined from interfering with the property in the receiver's charge, and be committed for contempt for levying upon property in the

custody of the court. The court issued a restraining order and a rule to show cause, returnable at Charleston on February 20, 1893, as follows:

"Ordered, that an order do forthwith issue and be served upon said MacMitchell and M. V. Tyler, requiring them to show cause before me on the 20th day of February, 1893, at 10 o'clock A.M., at the United States court-house, Charleston, S. C., why they should not be attached and punished as prayed for.

"2. That the said MacMitchell and M. V. Tyler do likewise show cause before me at the same time and place why they should not be enjoined and restrained from interfering with any or all of the property of the said South Carolina Railway Company or other property in the possession and control of the said D. H. Chamberlain as receiver and officer of this court, or from interfering in any manner whatsoever with the officers and agents of the said receiver, and also from levying upon, advertising or selling or in any manner whatsoever attempting to dispose of the said property. That the said MacMitchell and M. V. Tyler do likewise in due course file an answer, if any, why such further relief as may be necessary should not be granted in the premises.

"4. In the meantime it is ordered that the said MacMitchell and M. V. Tyler be, and they are hereby, restrained and enjoined from levying upon, seizing, advertising or selling or in any manner whatsoever endeavoring to interfere with or to dispose of the said property in the possession of the said D. H. Chamberlain, as receiver of this court, until the hearing of the rule and the order of this court thereon.

"5. That a copy of the petition and order herein be forthwith served upon the said MacMitchell and M. V. Tyler."

On February 8 a supplemental petition was filed by the receiver, reciting the filing of the original petition, the order thereon, and the service of copies of said petition and order, and stating that the sheriff refused to comply with a written demand, on February 7, for the release of the property from his custody.

Accompanying this supplemental petition were affidavits

stating the facts in detail, whereupon the order of February 6 was so modified as to require the respondents to show cause on February 11, 1893, instead of February 20.

The respondents answered the petitions on February 12, denying any unlawfulness in the assessment and admitting that the property was in the possession of the court, but denied that such possession exempted the same from process of law for the collection of taxes by the State. They admitted the levy upon the cars, but denied any knowledge or information sufficient to form a belief that any of them belonged to corporations other than the South Carolina Railway, and denied that the levy seriously interfered with the receiver or the public in doing business over said road. They further denied that the facts stated in the original and supplemental petitions, if true, were sufficient to constitute a contempt of court, and insisted upon various matters, afterwards again set forth in the application for *habeas corpus*.

They asserted the legality and regularity of the warrants for the collection of the taxes, and that the levy was made in obedience thereto, and submitted that they were acting under the laws of South Carolina as the officers and agents of the State, "and as such engaged in the performance of their duties in issuing the said execution, in making the said levies and in retaining possession of the property so levied upon, under the valid constitutional laws of the said State, and that if said petitioners have any controversy with any one in regard thereto, it is a controversy with the State of South Carolina, which is no way a party to these proceedings, and that there can be no controversy with the respondents in this regard unless they were acting without the commission and warrant of the State of South Carolina and were trespassers, which they deny." And, finally, they disclaimed "any intention to treat this court or its orders with disrespect, and state that they have been actuated alone with a desire to discharge their official duties as officers of the State of South Carolina."

This return was accompanied by a large number of affidavits tending to show the legality of the tax complained of.

A hearing having been had, the Circuit Court delivered its

opinion, stating the facts briefly, and holding that the interference by the court by injunction was justified on the ground of excessive levy and on the ground of the taking of property other than the property of the alleged taxpayer; but further, that while property in the hands of a receiver of any court, either state or national, was bound for the payment of taxes, state, county, or municipal, yet that a receiver is not bound to pay taxes in his judgment unlawful, unless by the order of the court whose officer he is; and that in the present proceeding it was not competent for the court to go into the question of whether the tax was or was not illegal. The Circuit Court thereupon entered severally the following orders:

" This cause came on to be heard on petition, rules to show cause, return thereto and affidavits. And on hearing the same, and upon due consideration thereof, it is

" Ordered, adjudged and decreed, that an injunction do issue to M. V. Tyler, sheriff of Aiken County, his deputies and agents, enjoining and restraining them from further intermeddling, interfering with, keeping and holding the personal property distrained upon by him, belonging to the petitioner, as receiver of the South Carolina Railway Company, or in his care and custody as receiver and common carrier, and that this injunction remain of force until the further order of this court.

" It is further ordered, that the said property be restored to the custody of the receiver of this court, and that the marshal put him in possession thereof."

" M. V. Tyler, sheriff of Aiken County, having been served with two rules to show cause why he be not attached for contempt, for the matters set forth in copy of petition to each rule attached, and sufficient cause not having been shown, and it further appearing that he, notwithstanding, continues to hold and detain said property, we adopt the precedent set in *In re Childs*, 22 Wallace, 157, by the Supreme Court of the United States.

" It is ordered, adjudged and decreed, that he is in contempt of this court and of its orders and process.

" It is further ordered that he do pay a fine of five hundred

dollars, and that the clerk of this court shall enter judgment thereon and issue execution therefor. And that he also stand committed to the custody of the marshal of this court until he has paid said fine, or purged himself of his contempt herein."

Among other averments in the petition for the writ of *habeas corpus*, it was alleged that by an act of the general assembly of South Carolina, (No. 631,) approved March 19, 1874, 15 S. C. Stat. 789, it is provided that in all cases where it is claimed that taxes have been erroneously or illegally charged upon taxable property within the State, the person so claiming may, by petition, submit a full statement of the facts in the case, and the comptroller-general may make such abatement thereof as, in his judgment, the same may demand, and that such relief so granted in cases for erroneous charges as aforesaid has not been sought by the receiver or the railroad company. That by the statutes of the State it is also provided that the collection of taxes shall not be stayed or prevented by any injunction, writ or order issued by any court or judge thereof, Gen. Stats. S. C. sec. 171, and that in all cases where taxes are charged against any person, which he may conceive to be unjust or illegal for any cause, he shall pay the taxes notwithstanding, under protest, and upon such payment being made the person so paying may, within a time limited, by action against the county treasurer, recover such taxes as may, in such suit, be adjudged to have been wrongfully or illegally collected. It was further averred that by the act of Congress approved March 3, 1887, and amended by the act of August 1, 1888, the receiver appointed in this case was required to manage and operate the property situated in South Carolina according to the requirements of the valid laws of that State in the same manner as if in possession of the owner thereof; and petitioner insisted that the action of the Circuit Court in appointing a receiver did not change the title or possession of the property or its relation to the sovereign power of the State to tax it, and was subject in like manner as the property would have been subject had it remained in the hands of its owners. Petitioner also referred to an act of the

legislature of South Carolina, approved December 24, 1892, Acts S. C. 1892, p. 81, which provided that the assessment of property for taxation should be deemed and held to be a step in the collection of taxes; that certain enumerated sections of the general statutes, thereby declared to be in full force and effect, should be construed to mean as giving full and complete power to the county auditor independent of any rights conferred on county boards of assessors, or other officers, in the matter of securing a full and complete return of property for taxation in all cases, and that the action of the auditor under those sections should not be interfered with by any court of this State by mandamus, summary process, or any other proceeding, but that the taxpayer should have the right to pay his tax on such return under protest, as now provided by law. Petitioner, therefore, insisted that an adequate remedy at law was given the taxpayer for unjust and excessive taxation, and that it was not competent for a court of the United States to grant the injunction in this case, any more than it would have been for a court of the State; that the receiver's possession is that of the court, only for the parties litigant in the suit, and to the extent only of the power to subject the property to the rights of suitors, subject to the paramount right of the State to tax the property according to its own laws; that the railway company was a citizen of South Carolina, and hence that the receiver, as plaintiff in his petition, represented a citizen of South Carolina, and proceeded against the petitioner Tyler, who was also a citizen of that State; that the amount involved was less than gives jurisdiction to the Circuit Courts of the United States; that, on the grounds indicated, the court had no jurisdiction, and its order was void; and that, therefore, the order of commitment and fine was void. In conclusion petitioner insisted:

"1st. That the injunction proceeding by the receiver is a suit against the State of South Carolina; that to enjoin the functionary is to forbid the function of the State to tax by its own laws and fix and assess its amount by its own procedure; and that your petitioner, as the officer charged with this state function, is sued by the receiver, which is in fact a suit against

the State, and contrary to the Eleventh Amendment of the Constitution of the United States.

"2d. That under the laws of the United States and of the State the remedy of the owner or taxpayer is ample by proceeding at law, and he can have none in equity, which is denied by the statute of the State and on general principles of equity practice, and that the exigency which induced the appointment of a receiver does not in any respect change the legal aspect of the case, but makes the order of the court of the United States illegal, void and without jurisdiction.

"3d. That to fine and imprison your petitioner for action as a legal officer, under and according to the valid laws of South Carolina, is to deny the authority of the State itself, by making it impossible for the State to execute its laws by agents, except under penalties which the United States courts cannot impose as an obstruction to the functions of the State itself.

"Wherefore your petitioner insists that he is held in custody against law, and contrary to the Constitution of the United States, the supreme law of the land."

This case was argued with Nos. 16, 18 and 19 original, *post*, page 191.

*Mr. Ira B. Jones*, (with whom was *Mr. Samuel Lord* on the brief,) for the petitioners in all the cases.

I. While a proceeding by *habeas corpus* is a civil proceeding, *Ex parte Tom Tong*, 108 U. S. 556; *Robb* v. *Connolly*, 111 U. S. 624, contempt of court is a specific criminal offence, and the imposition of the fine is a judgment in a criminal case. *New Orleans* v. *Steamship Co.*, 20 Wall. 387; *Ex parte Kearney*, 7 Wheat. 38. Ever since the case of *Bollman* v. *Swartwout*, 4 Cranch, 75, it has not been doubted that the Supreme Court has authority to issue *habeas corpus* where a person is in custody under the warrant or order of any court of the United States. The struggle since has been as to the extent of the inquiry the court could make into the causes of the commitment.

Previous to the act of March 31, 1891, establishing the Circuit Court of Appeals, and defining the jurisdiction of the United States courts, it was settled that the Supreme Court, having no jurisdiction of criminal cases by writ of error or appeal, could not, on *habeas corpus,* examine into the sufficiency of the evidence on which the judgment and sentence of the court was founded, but could, and it was its duty to do so, discharge by means of *habeas corpus* any person imprisoned under sentence of any court of the United States, in a criminal case, where there was a want of jurisdiction or an excess of the jurisdiction, power or authority of the committing court in the judgment and sentence imposed. *Ex parte Hamilton,* 3 Dall. 17; *Ex parte Bollman,* 4 Cranch, 75; *Ex parte Watkins,* 3 Pet. 193, 7 Pet. 568; *Ex parte McCardle,* 6 Wall. 318, 7 Wall. 506; *Ex parte Metzger,* 5 How. 176; *Ex parte Kaine,* 14 How. 103; *Ex parte Wells,* 18 How. 307; *Ex parte Milligan,* 4 Wall. 2; *Ex parte Kearney,* 7 Wheat. 38; *Ex parte Yerger,* 8 Wall. 85; *Ex parte Lange,* 18 Wall. 163; *Ex parte Parks,* 93 U. S. 18; *Ex parte Virginia,* 100 U. S. 339; *Ex parte Siebold,* 100 U. S. 371; *Ex parte Rowland,* 104 U. S. 604; *Ex parte Mason,* 105 U. S. 696; *Ex parte Curtis,* 106 U. S. 371; *Ex parte Carll,* 106 U. S. 521; *Keyes* v. *United States,* 109 U. S. 336; *Ex parte Yarbrough,* 110 U. S. 651; *Ex parte Crouch,* 112 U. S. 178; *Ex parte Bigelow,* 113 U. S. 328; *Ex parte Wilson,* 114 U. S. 417; *Ex parte Fisk,* 113 U. S. 713; *In re Ayers,* 123 U. S. 443.

If, therefore, the act establishing Circuit Courts of Appeals, approved March 3, 1891, authorizes the Supreme Court to review on appeal by defendants in criminal cases, the judgment of the court below on such questions as are raised in the application for *habeas corpus* in these cases, there seems to be no obstacle in the way now of this court in proper cases extending the uses of *habeas corpus* to an inquiry into the sufficiency of the evidence on which the judgment was founded and into errors of law beyond jurisdictional errors.

This sweeping change in the appellate jurisdiction of this court seems clearly to allow defendants in criminal cases a right to appeal direct to this court in such cases above provided.

II. If, however, we are mistaken in this respect, and the inquiry is limited to jurisdictional errors, then we submit that the Circuit Court "has acted without jurisdiction, or has exceeded its powers to the prejudice of the party seeking relief," *In re Lane*, 135 U. S. 443; because the sheriffs in making the levy for taxes were acting as the duly authorized law officers and representatives of the State of South Carolina, acting in obedience to the requirements of the valid laws of the State and the commands of a superior officer; and that since the State cannot be made a party to these proceedings without her consent, neither can her representatives. The test whether an officer of the State can be sued, is whether the officer is a trespasser. If the officer can justify his act under a valid constitutional law of the State, he is not a trespasser and is the representative of the State which cannot be sued without its consent. *Virginia Coupon Cases*, 114 U. S. 269; *Hagood* v. *Southern*, 117 U. S. 52. See also *Cunningham* v. *Macon & Brunswick Railroad*, 109 U. S. 446; *Poindexter* v. *Greenhow*, 114 U. S. 270, 288; *Osborn* v. *United States Bank*, 9 Wheat. 738; *Davis* v. *Gray*, 16 Wall. 203; *Board of Liquidation* v. *McComb*, 92 U. S. 531; *United States* v. *Lee*, 106 U. S. 196.

III. We concede, in its fullest scope, the doctrine that property in the hands of a receiver appointed by a court is in the custody of the law and cannot be interfered with by a trespasser or to enforce a private claim, and that any such interference with the receiver's possession may be punished as a contempt of the court. Our contention is that receiver's possession is subordinate to the right of the State in the exercise of its sovereign power, in its own authorized way, to collect its taxes which are essential to its existence against all property within its jurisdiction.

This question came up before Mr. Justice Brewer in the case of *Central Trust Co.* v. *Wabash, St. Louis &c. Railroad*, 26 Fed. Rep. 11, in which a receiver prayed protection from the payment of a tax. Injunction to restrain tax collector was refused. The same question was presented to Mr. Justice Blatchford in *Stevens* v. *Midland Railroad*, 13 Blatchford, 104. The court denied the application of a receiver for

injunction against a tax officer. To exempt property in the hands of a receiver from summary seizures for taxes is: (1) Inconsistent with the power of taxation ; (2) inconsistent with the revenue laws of the State in which it is situated ; (3) contrary to the settled policy of the United States, which is, not to interfere with the revenue laws of the State ; and (4) contrary to the spirit, if not to the letter, of Amendment XI to the Constitution.

The orderly administration of justice requires non-interference with property in the hands of the court, without the court's permission. This is a settled principle of law. On the other hand, it is just as clearly settled that the State is sovereign in the matter of her revenue laws which do not trench upon the federal Constitution, and that a summary collection of revenues, essential to the existence of the State, is necessary. When these principles conflict, which must yield ? There can be no orderly administration of justice without government, and there can be no government without revenue. The power to tax, and the right to speedy process for its collection, must stand as the first cause, the bed-rock of the government, and any other power of government which conflicts with this must yield.

*Mr. Hugh L. Bond, Jr.,* (with whom were *Mr. Henry Crawford* and *Mr. J. S. Cothran* on the brief,) for the respondents in the cases of Tyler, Gaines and Ryser, petitioners in Nos. 16, 17 and 18.

*Mr. D. A. Townsend,* Attorney General of the State of South Carolina, filed a brief for all the petitioners.

*Mr. Joseph W. Barnwell* for the respondent in No. 17, Tyler, petitioner.

*Mr. John Randolph Tucker* closed for all the petitioners.

In concluding the argument, I propose to insist, without waiving the other points on my brief, only on the point that the suit was in fact a suit against the State.

Referring for the history of the Eleventh Amendment to the opinion in *In re Ayers*, 123 U. S. 443, Judge Campbell's brief in *New Hampshire* v. *Louisiana*, 108 U. S. 76, *Hans* v. *Louisiana*, 134 U. S. 22, *McGahey* v. *Virginia*, 135 U. S. 662, 684, and *Pennoyer* v. *McConnaghy*, 140 U. S. 1, I remark that the mandatory language of that amendment is emphatic. " The judicial power shall *not* be construed," etc. It is a constitutional rule of construction, to prevent by direct or indirect methods a suit against a State in a court of the United States.

Nor need the State be sued by name, to bring the case within the mandate of the amendment. Cases *supra*, and the overruling of the *dictum* in *Osborn* v. *Bank of the United States*, 9 Wheat. 738, in *Georgia* v. *Madrazo*, 1 Pet. 110, 7 Pet. 627, *sub nom. Madrazzo*, commented on by the court in *In re Ayers, supra.*

In *In re Ayers, supra*, and cases cited therein, it is settled that if the act of a state officer is contrary to the Constitution of the United States, he cannot protect himself against suit, by a claim that he represents the State. But where an officer of the law does an act under valid and constitutional authority of the government of his State, in obedience to its order and in pursuance of his sworn duty as its officer, the act is not his own, it is the *act of the State by its own will and mind and hand*, the hand and will and mind of its own officer. If those by whom *alone* the State can act may be punished or prevented, it is folly to say the State is not punished and prevented. To enjoin the officers through whom only it can act is to enjoin the State; to sue these is to sue the State. If these are deterred by such proceedings from acting, it is deterred from action; is a State maimed and helpless; a State only in name; a sovereign without will or capacity to act at all.

If Congress (*Collector* v. *Day*, 11 Wall. 113) cannot tax the salary of a state officer, because thus impairing state autonomy, how can a federal court fine him for doing his duty, or imprison him to prevent his doing it? He is vicariously a victim for the State. If property he holds only for it is taken

from him, or if he be compelled to surrender it, *he* is deprived of nothing, but the State is. If so, is not the State sued contrary to the Eleventh Amendment, or decreed against without a hearing? without due process of law secured by the Fifth Amendment?

That the law under which this tax is claimed is not against the federal Constitution is clear. *Murray* v. *Hoboken Co.*, 18 How. 272; *Cheatham* v. *United States*, 92 U. S. 85; *Stanley* v. *Albany Supervisors*, 121 U. S. 535; *Tennessee* v. *Sneed*, 96 U. S. 69; *Shelton* v. *Platt*, 139 U. S. 591, citing *Synder* v. *Marks*, 109 U. S. 189. Nor is it against the state constitution. *Charlotte, Columbia &c. Railroad* v. *Gibbes*, 142 U. S. 386; *Whaley* v. *Gaillard*, 21 S. C. 510.

The case stands then free of the only objection to the officer's claim of immunity from suit, because he represents the State. He has no interest in the *lis contestata*, except as her representative. The assessor and sheriff exercised official *discretion*, and therefore represented the State, as has been often held, and how can judicial action be substituted for legislative or executive discretion? *State Railroad Tax Cases*, 92 U. S. 575; *Stanley* v. *Albany Supervisors*, and other cases, *supra*.

In all such cases, as the right or interest involved is that of the State, and none other, the State is a *necessary party* to any suit, where the judgment affects it, and unless made a party, *no judgment is lawful;* and it cannot be made a party because of the Eleventh Amendment. This is strongly stated by this court in *Hagood* v. *Southern*, 117 U. S. 52, 71. The court says that no decree can be made, because the State is no party; and the State may refuse to be a party.

In *Georgia* v. *Madrazo*, 1 Pet. 110, *Cunningham* v. *Macon &c. Railroad*, 109 U. S. 446, and *Louisiana* v. *Jumel*, 107 U. S. 711, property held by state officers without right, and against the provisions of the Constitution of the United States, was held to be beyond the reach of a federal court, because the officers held for the State, and to oust their possession would be to oust the possession of the State. This cannot be done but by making the State a party, which the Eleventh Amendment forbids. See in accord with this, the

case of *Queen* v. *Lords Commissioners of the Treasury*, L. R. 7 Q. B. 387, 400.

With these settled principles, let us see now what was done in these cases.

In three of them, the lien for taxes attached in November, 1891, and the receiver was not appointed in these cases until May and August, 1892. The receivers took subject to the legal lien, the lien of the *State*. That lien was made effectual by levy under which the sheriff held possession. This lien was paramount to all, protected by receivers. Mere levy did not disturb the receiver's possession. *Albany Bank* v. *Schermerhorn*, 9 Paige, 372; *S. C.* 38 Am. Dec. 551; *Hewitt* v. *Midland Railroad*, 12 Blatchford, 452, 13 Ibid. 104; *Georgia* v. *Atlantic & Gulf Railroad*, 3 Woods, 437; *Central Trust Co.* v. *Wabash &c. Railway*, 26 Fed. Rep. 11.

But the court, by its order, set at naught the lien of the State, and its levy, without making the State a party. This could not be done. That lien and levy were adjudged null without a hearing. The State was a necessary party, and the decree made in its absence was void.

By a mandatory injunction upon its officers, the court divested the State of its possession, and as it was a necessary party, before this could be done the order was absolutely void.

Finally the marshal seized the property in the hands of the State and returned it to the receiver. Can there be doubt that this was *ultra vires*, when the State was not, and could not be made a party? *Hagood* v. *Southern; Cunningham* v. *Macon; Louisiana* v. *Jumel, supra.*

The court did all this on a claim to decide on the amount of tax due, in disregard of the *quasi* judicial action of the Boards of the State, action which this court has held conclusive on the taxpayer, except by payment and suit to recover back. *Hagar* v. *Reclamation District*, 111 U. S. 701, 710; *Stanley* v. *Albany Supervisors*, 121 U. S. 535.

For refusal to obey the order of the court and to surrender the possession held by his officers for the State, they were imprisoned to compel obedience. The officer in prison was thus disabled from holding and protecting the State's rights of

property. Sustain this order, and the tax due the State may be enjoined perpetually, and its power to collect or adjudicate it will be destroyed. Its tax law will be nullified, and the court will, by its receiver, sit in the seat of its sovereignty.

Every injunction is based on an *equity* of plaintiff against some *legal* right of defendant, and the court is bound to adjust the conflict. But how can it do this without deciding how much tax is due to State? and how do that unless the State be a party? and how can it make the State a party?

From doing both of these the court is excluded; from the one by fundamental principles of right, from the other by the Constitution of the United States. In this dilemma, only one course is left: dismiss the bill, as without jurisdiction, and discharge the prisoners.

But it is insisted, that this property was in *custodia legis*, and that this makes a difference.

All the cases cited are cases of corporations, municipal or private. None touch the case of a State. In cases of corporations the court of the receiver may compel the party to submit to its intervention. But this cannot apply to a State.

It is said, the receiver's court will by its action decree what is *rightly* due the State. But the answer is conclusive, that such decision cannot be made against the claim of the State, unless the State be made a party. But it is not a party, and cannot be made one. How, then, can the court decide? The real issue is, not whether the federal court will or not decide justly, but where is the *jus decidendi*. The Eleventh Amendment declares it is not with the federal court unless the State waives its immunity; and *Hagood* v. *Southern*, *supra*, decides that the State cannot be compelled to be a party; and no decision can be made against its right where it is not a party. Can the receiver's court by *sequestration* of the property within the reach of the state process, by so holding it, through fine and imprisonment, as to prevent remedy, drive the State to this dilemma? "Take nothing for your claim, or what that court will decide you entitled to." This would be a judicial strategy in fraud of the Eleventh Amendment. It would be equivalent to saying: The receiver's court will

decide against you without a hearing, contrary to fundamental principles, or will compel you to be a party to this suit, contrary to your immunity under Eleventh Amendment. With the *jus decidendi* denied to the federal court by that amendment, it would usurp it by duress on the officers of the State, and by a forceful withdrawal of all property from state process.

It may be plausibly argued, that for wrongful levy on property not subject to levy, or for excessive levy, or for obstruction of the railway, the court could enjoin the officer. But, as in *Rowland's Case*, 104 U. S. 604, the court has in excess of jurisdiction taken all out of the sheriff's hands, and imprisoned them for holding any of it, until all should be given up. This excess makes the order wholly void.

The court could not rightfully decide the fundamental question of *quantum* of tax. That was *coram non judice*. It should have sent the receiver to the state tribunals, where the State consented to the adjudication of its right, and should not have assumed or enforced a jurisdiction to try a tax right of the State without its consent, and in defiance of its constitutional immunity.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

Unless the order of commitment was utterly void for want of power, this application must be denied. The writ of *habeas corpus* is not to be used to perform the office of a writ of error or appeal; but when no writ of error or appeal will lie, if a petitioner is imprisoned under a judgment of the Circuit Court, which had no jurisdiction of the person or of the subject matter, or authority to render the judgment complained of, then relief may be accorded. *Ex parte Parks*, 93 U. S. 18; *Ex parte Terry*, 128 U. S. 289; *Neilsen, Petitioner*, 131 U. S. 176. And even if the contention were well founded, which is not at all to be conceded, that under the fifth section of the Judiciary Act of March 3, 1891, a writ of error might be brought to review such a judgment as that before us, and

that thereby our appellate jurisdiction was enlarged, we should still decline to consider the whole record for error merely, but only to ascertain whether the judgment was absolutely void.

The property in question was in the custody of the Circuit Court, in a cause within its jurisdiction, and protected by injunction. The power exercised was the power to protect the property in the custody of the court from invasion, and in order to sustain the receiver's application the ordinary grounds of equity interposition were not required to be set forth. Whether inadequacy of remedy at law in respect of the disputed taxes, or the requisite jurisdictional amount, or diverse citizenship, were shown to exist, was not and could not be matter of inquiry. But it may be observed that diverse citizenship is not material in ancillary and dependent proceedings, where jurisdiction exists over the subject of the litigation; *Krippendorf* v. *Hyde,* 110 U. S. 276; *Morgan's Co.* v. *Texas Central Railroad,* 137 U. S. 171, 201; that the objection of adequacy of legal remedy as here presented goes to the want of equity and not to want of power; *Reynes* v. *Dumont,* 130 U. S. 354; and that an apparent defect of jurisdiction for lack of a matter in controversy of sufficient pecuniary value can be availed of only by appeal or writ of error. *In re Sawyer,* 124 U. S. 200, 221. In the latter case, the distinction between an absolute want of power and its defective exercise, between cases where the subject matter falls within a class over which equity has jurisdiction and those where it does not, is clearly pointed out and the authorities cited.

No rule is better settled than that when a court has appointed a receiver, his possession is the possession of the court, for the benefit of the parties to the suit and all concerned, and cannot be disturbed without the leave of the court; and that if any person, without leave, intentionally interferes with such possession, he necessarily commits a contempt of court, and is liable to punishment therefor. *Wiswall* v. *Sampson,* 14 How. 52; *Taylor* v. *Carryl,* 20 How. 583; *Davis* v. *Gray,* 16 Wall. 203; *Krippendorf* v. *Hyde,* 110 U. S. 276; *Barton,*

v. *Barbour*, 104 U. S. 126; *Gumbel* v. *Pitkin*, 124 U. S. 131.

Ordinarily the court will not allow its receiver to be sued touching the property in his charge, nor for any malfeasance of the parties, or others, without its consent; and while the third section of the act of Congress of March 3, 1887, 24 Stat. 552, c. 373, now permits a receiver to be sued without leave, it also provides that "such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice." Neither that, nor the second section, which provides that the receiver shall manage the property "according to the valid laws of the State in which such property shall be situated," restricts the power of the Circuit Courts to preserve property in the custody of the law from external attack.

In this case, instead of issuing an attachment against the petitioner at once for forcibly seizing the rolling stock of this railroad under the circumstances appearing upon the face of the record, the court adopted the course of serving him with a rule to show cause, and with an order restraining him, in the meantime, from interference with the property. The petitioner refused to release the property upon request of the receiver, and persisted in his attempt to hold possession thereof by force in disregard of the order of the court.

The general doctrine that property in the possession of a receiver appointed by a court is *in custodia legis*, and that unauthorized interference with such possession is punishable as a contempt, is conceded; but it is contended that this salutary rule has no application to the collection of taxes. Undoubtedly property so situated is not thereby rendered exempt from the imposition of taxes by the government within whose jurisdiction the property is, and the lien for taxes is superior to all other liens whatsoever, except judicial costs, when the property is rightfully in the custody of the law, but this does not justify a physical invasion of such custody and a wanton disregard of the orders of the court in respect of it. The maintenance of the system of checks and

balances. characteristic of republican institutions requires the coördinate departments of government, whether federal or state, to refrain from any infringement of the independence of each other, and the possession of property by the judicial department cannot be arbitrarily encroached upon, save in violation of this fundamental principle.

The levy of a tax warrant, like the levy of an ordinary *fieri facias*, sequestrates the property to answer the exigency of the writ; but property in the possession of the receiver is already in sequestration, already held in equitable execution, and while the lien for taxes must be recognized and enforced, the orderly administration of justice requires this to be done by and under the sanction of the court. It is the duty of the court to see to it that this is done; and a seizure of the property against its will can only be predicated upon the assumption that the court will fail in the discharge of its duty, an assumption carrying a contempt upon its face.

The acceptance of the rule has been general, and but few decisions were cited on the argument in illustration of its application.

The Court of Appeals of Maryland, in *Prince George's County Commissioners* v. *Clarke*, 36 Maryland, 206, 218, stated the question presented to be "whether, after a decree has been passed by a court of equity for the sale of real estate and trustees have been appointed to make such sale, a collector of taxes has the power to seize and sell the same, or any part thereof, for taxes due." And the court thus proceeded: "The decree was passed the 9th of November, 1865. The taxes for which the land was sold were assessed for the years 1866 and 1867, and the collector's sale took place the 29th of September, 1870. The land in the meantime had been sold by the trustees, under the decree in the equity case, but exceptions having been filed to the sale, the question of its ratification was still pending. So that both at the time of the imposition of the taxes and at the time of the collector's sale, the land in question was under the control and jurisdiction of a court of equity. Under these circumstances it was not admissible for a collector to step in, and by a summary distress and sale divest the court

of its jurisdiction, and transfer the question of title to another tribunal. His plain and obvious duty was to apply to the court for the payment of the taxes due, and as they had full power, the presumption is, that they would have directed their payment through their agents, the trustees, in a manner that would have occasioned no unnecessary delay, while at the same time the rights of all interested would have been properly protected."

In *Greeley* v. *Provident Savings Bank*, 98 Missouri, 458, 460, payment of taxes upon intervention of the tax collector in a case wherein a receiver had been appointed, was resisted upon the ground of lapse of time, and the court said : " The amount of the taxes was undisputed, and the receiver had in his hands funds sufficient to pay them, and we think the order should have been made. It may be conceded that the State did not have an express lien upon the assets that went into the hands of the receiver, but it had a right paramount to other creditors to be paid out of those assets, . . . . a right which it could have enforced through its revenue officers by the summary process of distress, . . . but for the fact that the property and assets of its debtor had passed into the custody of its courts; whose duty it was in the administration and distribution of those assets to respect that paramount right, upon the untrammelled exercise of which depends the power to protect the very fund being distributed, and to maintain the existence of the tribunal engaged in distributing it; and to make no order for the distribution of assets *in custodia legis* except in subordination to that right. The ordinary revenue officers of the State being deprived of the ordinary means of securing the State's revenue from the fund in the custody of the court, the duty devolved upon the court to be satisfied, and upon the receiver to see, that the taxes due the State were paid before the estate was distributed to other creditors ; and we can conceive of no scheme of administration that the court could properly adopt by which the State's demand could be reduced to the level of an ordinary debt, and be cut off unless presented to the court for allowance within a given time." And see *Central Trust Co.* v. *N. Y. & Northern Railroad,* 110 N. Y. 250.

*County of Yuba* v. *Adams*, 7 California, 35, 37, was also a case of intervention, and the view of the court was thus expressed: "The levy of the tax gave to the intervenor a judgment and lien on the property assessed, having the force and effect of an execution, which might be enforced in the same manner as other executions. . . . This lien was not divested by the subsequent proceedings taken by Brumagim and others; but the fund, being in the custody of the law, was not liable to seizure, and the proper remedy was by direct application to the court having the fund in possession."

We do not understand any other or different rule to have obtained in the courts of South Carolina. Indeed, in *Hand* v. *Savannah & Charleston Railroad*, 17 S. C. 219, the court, without objection, passed upon a claim for taxes by the State against the property of the railroad company in the hands of the court, and held that it could not be maintained.

If such be the ordinary rule in the state courts, it is quite apparent that it is the only one that can be properly applied where property is in the custody of the courts of the United States. Their officers are the agents of the United States, and, without an order of the court appointing them, they are in duty bound to hold the property and refer those who would interfere with it to the court.

In *Georgia* v. *Atlantic & Gulf Railroad*, 3 Woods, 434, an application was made to the Circuit Court of the United States for the Southern District of Georgia on behalf of the State of Georgia for leave to sell the depots, freight houses, passenger houses, and offices of the railroad company, by virtue of a writ of *fieri facias* which had been levied on the property to enforce the collection of taxes due the State, and the levy suspended by affidavit of illegality filed by the railroad company under a provision of the Code of Georgia to that effect. A receiver had been appointed by the Circuit Court after the levy, and had possession subject to the prior lien of the execution which was being contested. Mr. Justice Bradley, for reasons given, held that the levy was void, and denied the application for leave to proceed with the execution, while he declared that the court would take care that the full

right of the State should be preserved so far as it should be brought judicially to the notice of the court.

In *Western Union Tel. Co.* v. *Atl. & Pac. Tel. Co.*, 7 Bissell, 367, Judge Drummond decided that proceedings in the state court on the part of one of the parties to condemn a right of way of the other, in the exercise of the power of eminent domain, was invalid, because the property was in the possession of the Circuit Court of the United States, through receivers, " and that, being so, no action could take place in the state court affecting it without the consent first obtained of this court."

In *Covell* v. *Heyman*, 111 U. S. 176, 182, where the question arose as to the replevin by process from a state court of property held by a United States marshal, which this court held could not be permitted, Mr. Justice Matthews, delivering the opinion, said : " The forbearance which courts of coördinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord ; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and, therefore, of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they coëxist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane ; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void."

This principle is applicable here, for whether the sheriff were armed with a writ from a state court or with a distress warrant from a county treasurer, this property was as much withdrawn from his reach as if it were beyond the territorial limits of the State.

The inevitable conclusion that this must be so, if constitu-

tional principles are to be respected in governmental administration, does not involve interruption in the payment of taxes or the displacement or impairment of the lien therefor, but, on the contrary, it makes it the imperative duty of the court to recognize as paramount, and enforce with promptness and vigor, the just claims of the authorities for the prescribed contributions to state and municipal revenue. And when controversy arises as to the legality of the tax claimed there ought to be no serious difficulty in adjusting such controversy upon proper suggestion. The usual course pursued in such cases is by intervention *pro interesse suo*, as in the instance of sequestration. 2 Dan. Ch. Pl. & Pr. 4th ed. 1057, 1744; *Savannah* v. *Jesup*, 106 U. S. 563, 564. The tax collector is a ministerial officer, *Erskine* v. *Hohnbach*, 14 Wall. 613; *Stutsman County* v. *Wallace*, 142 U. S. 293; and no reason is perceived why he should not bring his claim to the attention of the court, while, on the other hand, it is clearly the duty of the receiver to do so, if he contends that the taxes are illegal. If found valid, they must be paid; if invalid, the court will so declare, subject to the review of the appellate tribunals.

The courts of the United States have always recognized the importance of leaving the powers of the State in respect to taxation unimpaired. Where the questions involved arise under the state constitution and laws, the decisions of its highest tribunal are accepted as controlling. Where the Constitution and laws of the United States are drawn in question, the courts of the United States must determine the controversy for themselves.

Such was the aspect of this case. The receiver had denied the validity of a distinctive portion of the annual taxes, and under the direction of the court had proceeded by bill to test the question in reference to the levy for the previous fiscal year. Injunction had been granted, issues made up, and the case stood for final hearing. The alleged illegality existed in the levy for the current year. The receiver paid the undisputed taxes, and, upon the forcible intervention of the collectors to compel payment of the balance, brought the controverted point again to the attention of the court in his

application for the protection of the property. So far as the order before us is concerned, we are not called upon to review the grounds upon which the assertion of illegality is rested. It has been repeatedly and uniformly held by this court that in a proper case for equity interposition an injunction will lie to restrain the seizure of property in the collection of taxes imposed in contravention of the Constitution of the United States. *Osborn* v. *Bank of the United States*, 9 Wheat. 738; *Dodge* v. *Woolsey*, 18 How. 331; *Allen* v. *Baltimore & Ohio Railroad*, 114 U. S. 311; *In re Ayers*, 123 U. S. 443; *Shelton* v. *Platt*, 139 U. S. 591. Whether or not the particular case is one calling for that measure of relief, it is for the Circuit Court to determine in the first instance, and its action cannot be treated as a nullity.

It is said that any restraint upon or correction of unjust and illegal assessment and taxation by judicial interposition is inconsistent with the revenue laws of South Carolina, which only permit payment under protest and recovery back at law, and our attention is called to statutory provisions forbidding the courts to interfere with the collection of taxes by any writ, process or order, and to various decisions thereunder. In *State* v. *County Treasurer*, 4 S. C. 520, the subject was considered whether the legislature was precluded by the state constitution, prescribing the jurisdiction of the Circuit Courts, from taking away the remedy by prohibition commonly resorted to in the case of illegal taxation, and it was held that it was not, a vigorous dissenting opinion being delivered by Chief Justice Moses, who said (p. 539): "The power to tax is the most extensive and unlimited of all the powers which a legislative body can exert. It is without restraint, except by constitutional limitations. To tie up the hand that can alone resist its unlawful encroachments would not only render uncertain the tenure by which the citizen holds his property, but would make it tributary to the unrestrained demands of the legislature."

In *State* v. *Gaillard*, 11 S. C. 309, application was made to the court for a writ of mandamus, directed to the county treasurer, commanding him to receive bills of the Bank of

South Carolina for taxes, and the writ was refused.   Mr. Justice McIver concurred on the ground that the constitutionality of the prohibitory act had been settled in the case of *State* v. *County Treasurer*, just cited.

In *Chamblee* v. *Tribble*, 23 S. C. 70, the action was brought to enjoin the county treasurer from collecting certain taxes for railroad purposes.   The constitutionality of these provisions was again adjudged, Mr. Justice McIver concurring as before, solely on the ground of *stare decisis*, while Mr. Justice McGowan dissented.

In *Bank* v. *Cromer*, 35 S. C. 213, the court granted a mandamus to correct an assessment, and held that the statute did not prohibit the courts from exercising proper control over officers charged with the listing and assessment of property for the purpose of taxation when proceeding contrary to law.

This was followed by the passage of the act of December 24, 1892, providing that the assessment of property for taxation should be deemed and held to be a step in the collection of taxes, and inhibiting interference by mandamus, summary process or any other proceeding, with official action in respect of assessments.

Manifestly the object of this legislation was to confine the remedy of the taxpayer for illegal assessment and taxation, to the payment of taxes under protest, and bringing suit against the county treasurer for recovery back, but all this is nothing to the purpose.   The legislature of a State cannot determine the jurisdiction of the courts of the United States, and the action of such courts in according a remedy denied to the courts of a State does not involve a question of power.

The reasonableness of the contention that it would have been wiser, in this instance, for the Circuit Court to have directed the receiver to pay these taxes and bring suits at law in nine different courts against the county treasurers of as many counties, to recover them back, need not be passed upon.

The jurisdiction exercised by the Circuit Court had relation to the property in its custody, and the proceeding before us relates only to its exercise of power in the protection of that property from unauthorized seizure.

The stress of the argument, however, on behalf of the petitioner is placed upon the proposition that this proceeding is void, because it is in fact a suit against the State, and forbidden by the Eleventh Amendment. But this begs the question under consideration. The petitioner was either in contempt or he was not. This property was in the custody of the Circuit Court under possession taken in a cause confessedly within its jurisdiction, and if such possession could not be lawfully interfered. with, the petitioner was in contempt. And, apart from the question of the validity of such legislation, we know of no statute of South Carolina that attempts to empower its officers to seize property in the possession of the judicial department of the State, much less in that of the United States.

The object of this petition was, we repeat, to protect the property, but even if it were regarded as a plenary bill in equity properly brought for the purpose of testing the legality of the tax, we ought to add that in our judgment it would not be obnoxious to the objection of being a suit against the State. It is unnecessary to retravel the ground so often traversed by this court in exposition and application of the Eleventh Amendment. The subject was but recently considered in *Pennoyer* v. *McConnaughy*, 140 U. S. 1, in which Mr. Justice Lamar, delivering the opinion of the court, cites and reviews a large number of cases. The result was correctly stated to be that where a suit is brought against defendants who claim to act as officers of a State and, under color of an unconstitutional statute, commit acts of wrong and injury to the property of the plaintiff, to recover money or property in their hands unlawfully taken by them in behalf of the State; or, for compensation for damages; or, in a proper case, for an injunction to prevent such wrong and injury; or, for a mandamus in a like case to enforce the performance of a plain legal duty, purely ministerial; such suit is not, within the meaning of the amendment, an action against the State.

And while it was conceded that the principle stated by Chief Justice Marshall in the leading case of *Osborn* v. *Bank of the United States*, 9 Wheat. 738, that "in all cases .where

jurisdiction depends on the party, it is the party named in the record," and that "the Eleventh Amendment is limited to those suits in which a State is a party to the record," had been qualified to a certain degree in some of the subsequent decisions of this court; yet it was also rightly declared that the general doctrine there announced, that the Circuit Courts of the United States will restrain a state officer from executing an unconstitutional statute of the State, when to execute it would be to violate rights and privileges of the complainant that had been guaranteed by the Constitution and would do irreparable damage and injury to him, has never been departed from.

The views expressed in *United States* v. *Lee*, 106 U. S. 196; *New Hampshire* v. *Louisiana*, 108 U. S. 76; *In re Ayers*, 123 U. S. 443; *Hans* v. *Louisiana*, 134 U. S. 1; *McGahey* v. *Virginia*, 135 U. S. 662, and numerous other cases, render further discussion unnecessary.

The levies here were excessive, were made in a large part on property other than that of the defendants in the warrants, and in such a way and on such property as to obstruct the operation of the railroad. No leave of court was sought, and it was known that the legality of the amount unpaid was disputed by the receiver, and that identical taxation had been previously held by the court to be illegal. The sheriff declined upon request to release the property from seizure, or to yield to the order of the court.

Such conduct was not to be tolerated, and the court was possessed of full power to vindicate its dignity and to compel respect to its mandates. Its action to that end is not subject to review upon this application.

The petition for the writ of *habeas corpus* is        *Denied.*

MR. JUSTICE FIELD did not hear the argument and took no part in the consideration of this and the following cases.