## THE SYLFID.

(District Court, S. D. Alabama, S. D. April 22, 1909.)

No. 1,185.

PILOTS (§ 16*)—LIABILITY FOR NEGLIGENCE.

Respondent, shown to have been a competent and experienced pilot, well acquainted with the harbor, was taking a ship into a slip with two tugs, being in charge of the navigation of all three vessels. A barge was lying at the end of the pier, and when the ship was passing it she struck on an obstruction on the bottom, unknown to any of the pilots, and began to swing towards the barge. Respondent at once gave orders to the tugs which attempted to stop her swinging, but before it could be done a collision occurred. *Held*, that respondent was not chargeable with want of reasonable care which rendered him liable for the damage done either because he did not move the barge, or drop the ship's anchor; it appearing that vessels were usually taken in with safety under the same circumstances, and that the dropping of the anchor would not have availed to prevent the collision.

[Ed. Note.—For other cases, see Pilots, Cent. Dig. § 19; Dec. Dig. § 16.*]

In Admiralty.

Stevens & Lyons, for libelant.

Pillans, Hanaw & Pillans and Webb & McAlpine, for respondents.

TOULMIN, District Judge. It is my opinion, on the evidence in this case, that the ship Sylfid is not liable for the damages claimed. Whether the libelant is entitled to recover against the respondent Timothy Dorgan depends upon the question whether said Dorgan was guilty of negligence in the navigation and management of said ship in bringing her from her anchorage in the river to her berth at the dock; and whether such negligence was the cause of the collision complained of.

Said Dorgan was the pilot in charge of said ship and of her navigation, as well as in control of the tugs which were towing her. His services were employed at the instance and expense of the libelant, through the manager of the dock. The tugs towing the ship were in like manner employed. The ship had been removed from her berth in the slip at the dock at the request of the libelant and for his benefit, and was being returned to such berth after the libelant's occupation and use of it by his barge had ended. The libelant had agreed with the manager of the dock to pay all expenses incurred in said removal and return. The barge had been removed from the slip and was moored at the end of the pier adjoining said slip to let the ship in. The ship in charge of the tugs was proceeding in the usual course and over the ordinary way of travel of vessels bound for the particular dock and slip. There was no apparent danger in the way until the ship struck some obstruction in the channel theretofore unknown by the defendant Dorgan and by the pilots in charge of the tugs respectively. The ship caught on this obstruction at or near her stern and began to swing, as on a pivot, towards the left or port side of the ship and

in the direction of the barge. The tugs in charge of the ship—one being lashed to her starboard bow, and the other with a line over her bow—were ordered by the defendant Dorgan, the pilot on the ship, the one to back full speed, and the other to go ahead full speed, in the endeavor to keep her head off; but the evidence tended to show that, owing to the current and wind and the nearness of the ship to the barge at the time the ship took ground, they were unable to change the course of the ship sufficiently to keep her "head off" before her jib boom struck the barge and caused the injury complained of.

The contention on the part of the libelant is: (1) That said Dorgan, being deputy harbor master as well as pilot, seeing the barge moored in a dangerous place, was negligent in not ordering her removed before undertaking to bring the ship into the slip, near the entrance to which the barge lay; and (2) that he was negligent in not letting go the ship's anchor at the time she began to swing, as an important, if not necessary, means of holding her up stream and away from the barge.

In answer to the first contention, the evidence showed that ships had often been carried over the same ground and to the same dock and slip to which this ship was being carried, and with barges lying as this barge was, without accident or danger, and the evidence also tended to show that this ship would have entered the slip without this accident but for her unforeseen grounding or danger thereof. The pilot was required to take no precautions when there was no apparent danger. He was not bound to take any steps to avoid a collision until danger of a collision became apparent. The Grace Girdler, 7 Wall. 196, 19 L. Ed. 113; The Sunnyside, 91 U. S. 208, 23 L. Ed. 302.

In answer to the second contention, let us consider whether said Dorgan was guilty of any negligence or fault when danger of a collision became apparent, or did he use proper precautions against danger? Did he exercise, under the circumstances, ordinary care, caution, and maritime skill to prevent the occurrence? The highest degree of caution that can be used is not required. It is enough that it is reasonable under the circumstances—such as is usual in similar cases, and has been found by long experience to be sufficient to answer the end in view. The Grace Girdler, 7 Wall. 203, 19 L. Ed. 113; In re Tyler, 149 U. S. 171, 13 Sup. Ct. 785, 37 L. Ed. 689.

The only evidence on this subject is that of Dorgan himself, and of the two masters and pilots of the tugs that were engaged in the service. They testified to what was done, and that the same was reasonable and usual in similar cases and all that could have been reasonably done under the circumstances. The evidence further was that Dorgan was an experienced pilot and reputed to be first class. There was no evidence to the contrary. But it is said that he failed to exercise due care and maritime skill in not putting out the anchor. This contention is based on the testimony of the master of the ship. He said if he "had been a pilot on his part he would let go the starboard anchor." Said master further stated that he did not say that the collision could have been prevented by dropping the anchor, but that it might have

been tried. Dorgan stated that the letting go the anchor would not, under the existing conditions, have availed anything, and gave reasons for his opinion on the subject. There was no other evidence on this point.

I do not find from the evidence there was any negligence or fault on the part of said pilot. My opinion is that the accident occurred from causes over which the pilot could at the time exercise no control. When this is the case, the rule is that the loss must rest where it fell.

The libel is dismissed as to both respondents.

The evidence showed certain damages done to the ship, and a loss incurred in the use and breaking of a line belonging to the ship. This line was used by the pilot and tugs in pulling or trying to pull the ship's head off the barge, and in such use was broken. The evidence showed that it cost the ship to replace this line $111.36, and that it incurred small expense for the other damages mentioned, and that what was left of the broken line was worth $15. The ship claims in a cross-libel against the libelant and its co-respondent Dorgan these expenses. These expenses were incurred by the ship and were incident to, and caused by her removal from, her berth at the dock. It seems to me that she, in right and justice, is entitled to be reimbursed therefor. By whom? Clearly by the libelant, who procured the ship's removal and for whose use and benefit she was removed, and who had agreed to pay for all expenses incurred in such removal. I think the libelant is liable to the ship for them. If the pilot was guilty of negligence or fault in the services performed by him for the libelant, in the performance of which the loss for which this expense was incurred, he would probably be liable to the libelant; but, finding no negligence or fault on his part, this court can render no decree against him.

Decree on the cross-libel against the libelant, James Gibboney & Co., for $111.36.