### ADAIR v. BEVERLY HILLS PETROLEUM CORPORATION, Limited.

District Court, S. D. California, Central Division.

June 3, 1932.

Mitchell, Silberberg & Davis, of Los Angeles, Cal., for receiver.

Everett W. Mattoon, County Counsel, and Gordon Boller, Deputy County Counsel, both of Los Angeles, Cal., for Los Angeles County.

HOLLZER, District Judge.

By this proceeding, the tax collector of Los Angeles county seeks to have this court declare certain taxes, assessed against personal property of the defendant, to be a preferred claim. These taxes were assessed on the first Monday of March, 1931, against property which subsequently came into the possession of the receiver, but which property the receiver has since sold and converted into cash.

A claim for said taxes has been allowed by the receiver merely as a general claim. The latter contends that, under the decision rendered by this court in Clara I. Damm v. U-Save Holding Corporation, 58 F. (2d) 416, and the cases there cited, such taxes do not constitute a preferred claim.

To our mind the proceeding at bar is readily distinguishable from the U-Save Holding Corporation Case. In the last-mentioned proceeding, the property against which the taxes had been levied by the city of Pasadena never had come into the possession of the re-

ceiver, and, furthermore, the latter at no time acquired any property located within said city. Hence, in that case, the city, prior to the appointment of the receiver, had lost the power of distraint and had been relegated to the position of a general creditor in enforcing the collection of the taxes due to the municipality.

In the proceeding now before us, the county could, and doubtless would, have enforced collection of the taxes due it through the power of distraint, but for the fact that through the appointment of a receiver the property of the defendant had been placed in custodia legis.

In Coy v. Title Guarantee & Trust Co., 220 F. 90, 92, L. R. A. 1915E, 211, the Circuit Court of Appeals for this circuit declared:

"We regard it as wholly unimportant that under the laws of Oregon taxes levied upon personal property do not constitute a lien thereon, nor a 'debt.' The statutes of that state do declare the personal property of every individual liable to taxation, and that like property of every private corporation is likewise liable. * * *

"It is too clear for argument that the appointment of a receiver and the taking of property into the hands of the court through its officer does not withdraw it from taxation. It remains subject to assessment and to the payment of all legal taxes thereon while in custodia legis, to the same extent as it was while in the possession of the owner. And whether or not such taxes be a lien or a debt by the laws of the government within whose jurisdiction the property is situated, such taxes are and should be regarded by the courts as a preferred and paramount claim over all other claims, for they are essential to the existence and maintenance of the very government under which the property is acquired and protected.

"'A court,' says Cooley on Taxation (3d Ed.) vol. 2, p. 834, 'having in its charge or under its control a fund or other property upon which taxes are due, will, as the representative of the sovereignty, direct them to be paid without raising any question of the means of enforcement by process, and before all other claims except judicial costs. Thus upon proper application and suitable proof a receiver will be ordered to satisfy a tax assessed against the property in his hands, and a like direction will be made in other cases where funds are held subject to the authority of the court.'"

Speaking for the Supreme Court of the United States, Mr. Chief Justice Fuller, in the case of In re Tyler, 149 U. S. 164, said, at pages 184, 185, 13 S. Ct. 785, 790, 37 L. Ed. 689:

"In Greeley v. Provident Savings Bank, 98 Mo. 458, 460, 11 S. W. 980, payment of taxes upon intervention of the tax collector in a case wherein a receiver had been appointed was resisted upon the ground of lapse of time, and the court said: 'The amount of the taxes was undisputed, and the receiver had in his hands funds sufficient to pay them, and we think the order should have been made. It may be conceded that the state did not have an express lien upon the assets that went into the hands of the receiver, but it had a right paramount to other creditors to be paid out of those assets,—a right which it could have enforced through its revenue officers, by the summary process of distress, but for the fact that the property and assets of its debtor had passed into the custody of its courts, whose duty it was, in the administration and distribution of those assets, to respect that paramount right, upon the untrammeled exercise of which depends the power to protect the very fund being distributed, and to maintain the existence of the tribunal engaged in distributing it, and to make no order for the distribution of assets in custodia legis except in subordination to that right. The ordinary revenue officers of the state being deprived of the ordinary means of securing the state's revenue from the fund in the custody of the court, the duty devolved upon the court to be satisfied, and upon the receiver to see, that the taxes due the state were paid before the estate was distributed to other creditors; and we can conceive of no scheme of administration that the court could properly adopt by which the state's demand could be reduced to the level of an ordinary debt, and be cut off unless presented to the court for allowance within a given time.' And see Central Trust Co. v. New York C. & N. R. Co., 110 N. Y. 250, 18 N. E. 92 [1 L. R. A. 260].

"County of Yuba v. Adams, 7 Cal. 35, 37, was also a case of intervention, and the view of the court was thus expressed: 'The levy of the tax gave to the intervener a judgment and lien on the property assessed, having the force and effect of an execution, which might be enforced in the same manner as other executions. This lien was not divested by the subsequent proceedings taken by Brumagim and others; but the fund, being in the custody of the law, was not liable to seizure, and the proper remedy was by direct application to the court having the fund in possession.'"

96

In Marshall v. New York, 254 U. S. 380, 41 S. Ct. 143, 65 L. Ed. 315, the Supreme Court of the United States held that annual franchise taxes and annual license fees due to the state of New York from a corporation engaged in doing business in that state were payable as preferred claims out of the assets in the hands of a receiver of the property of said corporation. The reasoning upon which that decision was reached was that at common law the crown of Great Britain had priority over all subjects for the payment out of the debtor's property of all debts due to it, whether the property was in the possession of the debtor or of a third person, or in custodia legis; that the Constitution of the state of New York provided that the common law of England should be and continue the law of that state, subject to such alterations as its Legislature might thereafter make; that the courts of New York had decided that, by virtue of this constitutional provision, the state as sovereign had succeeded to the crown's prerogative right of priority and that such priority extended alike to all debts due to the state; that a receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state; that a warrant for the amount of the taxes might be issued but for the appointment of the receiver, and, if the levy had been made, it would have become a lien on all the property of the company; and that, under the rule announced in the case of In re Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689, an application to the court for payment of the debt due was the appropriate remedy, since the prerogative right of the state could not be enforced by levy and seizure.

Section 4468 of the Political Code of the state of California declares: "The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this state, is the rule of decision in all the courts of this state."

The doctrine announced in the case of Marshall v. New York, supra, is neither repugnant to nor inconsistent with the Constitution or the laws of California, and we are unable to perceive why that doctrine is not equally applicable to this state.

In the instant case, the bill of complaint alleged, in substance, that the defendant corporation was solvent, and that, if its property and business were placed in the hands of a receiver, the corporation would be able to pay its liabilities in full. Upon the filing of an answer by the defendant, admitting all the material allegations of the bill, a receiver of its property was appointed. The order appointing the receiver provided in part that the latter, among all other powers customarily exercised by such receivers, should have authority to apply all income to the discharge of the obligations and proper charges against the business of the defendant, and the remainder to the discharge of the obligations of its creditors and also to keep all of the defendant's property protected and otherwise preserved, and to incur all expenses necessary or incidental thereto, and to pay the same.

But for the appointment of the receiver herein, as previously pointed out, the county could have enforced its claim in preference to all other creditors by distraining the property against which the taxes had been assessed. Such appointment of a receiver, however, did not deprive the county of the right to have its claim for taxes treated as paramount to the claims of unsecured creditors.

As observed by Mr. Justice Cardozo in the recent case of Michigan v. Michigan Trust Co., Receiver, etc., 52 S. Ct. 512, 515, 76 L. Ed. ——, decided May 16, 1932, by the United States Supreme Court: "Viewing the receivership in its true light as one, not to wind up the corporation, but to foster the assets, we think the annual taxes accruing while the receiver was in charge must be deemed expenses of administration and therefore charges to be satisfied in preference to the claims of general creditors. They are so treated in the order by which the receiver was appointed. By the order [of the court] the receiver is directed in continuing the business to pay taxes and rentals and any other expenses necessary to enable the business to go on, and to give such payments priority over other debts and obligations. These privilege fees were charges of the nature there described. Taxes owing to the government, whether due at the beginning of a receivership or subsequently accruing, are the price that business has to pay for protection and security."

For the foregoing reasons, an order will be entered allowing the claim of the county tax collector as a preferred claim.