ARDMORE NAT. BANK v. BRIGGS MACHINERY & SUPPLY CO. *et al.*

No. 663, Ind. T.    Opinion Filed March 10, 1908.

(94 Pac. 533.)

1.    RECEIVERS—Title and Right Acquired. The receiver of an insolvent, non-going corporation takes the property of the company for the creditors, subject to such equities, liens, or incumbrances, whether created by operation of law or by act of the corporation, which existed against the property at the time of his appointment.

2.    SAME—Rights Vest from Time of Appointment. The receiver's title and right to possession of the property of an insolvent, non-going corporation vests from the date of the original order for the appointment, although the proceedings may not be perfected until a later date. The receiver's title and right to possession during the interval between such original order and the time of perfecting his appointment are superior to those of a judgment creditor who levies upon the property under his judgment during such interval.

3.    SAME—Remedies to Enforce Liens—Prayer for General Relief. Where a vendor, after the appointment of a receiver to take charge of the property and affairs of an insolvent, non-going corporation, files its plea of intervention setting up all the facts in relation to certain reservation of title notes taken by the vendor for sales of machinery to the insolvent corporation, and further alleges that the reservation notes are liens on the property and prays for their foreclosure, and also prays for general relief, this is not such an election as will preclude the intervenor from afterwards amending its plea of intervention and asserting title and right to possession of the property described in the reservation notes as against one who claims to have a lien thereon subsequent in time to the reservation notes, where such lien, if it attached to the property at all, came into existence after the property fell into the hands of the receiver, notwithstanding the reservation notes were not filed as chattel mortgages.

4.    ACKNOWLEDGMENTS—Persons Entitled to Take—Officer of Grantor Corporation. The acknowledgment of a deed of trust, executed by a corporation grantor to secure payment of certain promissory notes, is a ministerial act. Where such an instrument is acknowledged before a notary public, who was at the time a director and treasurer of the grantor corporation, and

also indebted for unpaid subscriptions to its stock, which facts were known to the grantor, but there was nothing on the face of the instrument or acknowledgment indicating such relationship, the deed of trust was entitled to registration, and the registry thereof was notice to subsequent purchasers, incumbrancers, or lienors.

(Syllabus by the Court.)

*Error from the United States Court for the Southern District of the Indian Territory at Tishomingo; before*
*J. T. Dickerson, Judge.*

Bill by the Briggs Machinery & Supply Company and others against the Tishomingo Oil & Cotton Company, in which suit the Continental Gin Company and the Ardmore National Bank and others intervened. Judgment for complainants and the intervenor the gin company, and against intervenor the Ardmore National Bank, and the bank brings error. Affirmed.

*Ledbetter & Bledsoe,* for appellant.
*Stuart & Bell,* for appellees.

KANE, J. The appellees Briggs Machinery & Supply Company, Collins & Dulaney, and Stilwell-Bierce & Smith-Vaile Company, who hereafter will be called the complainants, commenced the proceedings out of which this suit grows by filing their bill in equity alleging that the Tishomingo Oil & Cotton Company, which will hereafter be called the Oil Company, was indebted to them severally as follows: To the Briggs Machinery & Supply Company, $7,864.64; to Collins & Dulaney, the sum of $4,580.88; to the Stilwell-Bierce & Smith-Vaile Company, in the sum of $5,546.65. All of these sums were evidenced by promissory notes. Contemporaneously with the dates of said notes, and for the purpose of securing their payment, the Oil Company made, executed, and delivered its certain deed of trust to J. C. Weaver, as trustee, whereby it conveyed to said trustee all the physical properties of said Oil Company situated at Tishomingo, Ind. T., the same being particularly described in the complaint and said deed of trust exhibited there-

with. It was further alleged that the Oil Company had become insolvent and unable to secure funds to operate its business, and that it was a nongoing concern, and further that said manufacturing establishment consists of valuable and costly machinery, and the same was liable to waste, and that it was being greatly damaged for the want of care. The complaint concludes with the following prayer:

"First, that the court do forthwith appoint a receiver to take charge of the property of said respondent Tishomingo Oil & Cotton Company, and to care for the same, and to hold the same in his custody and possession pending further order of the court, and second, for foreclosure of their trust deed and lien against said property, and that said lien be set up and declared to be a first lien upon the property, and third, that the court will order the sale of said property and estate for the purpose of paying the debts and satisfying the lien of the complainants; fourth, that complainants may have final judgment and a decree of foreclosure and sale in such terms and at such times as shall best protect their rights and the rights of any of their creditors who may intervene herein; and fifth, that the court do fix a time within which any persons urging claims, debts, or liens against said respondent corporation shall file their interventions herein. Complainants further pray that due and sufficient process may be issued and served with right form of law upon the respondent Tishomingo Oil & Cotton Company commanding it to be and appear, etc., and all other and further relief, both general and special, to which it may be entitled, complainants pray."

After the complaint was filed a great many of the creditors of the Oil Company, probably all of them, filed their pleas of intervention setting up their respective claims, and praying for relief. The court below took jurisdiction of the entire matter, and rendered to each creditor the relief the court found he was entitled to, disposed of all the assets of the Oil Company, and practically wound up its affairs. On the same day the complaint was filed Judge Townsend appointed Kirby Purdom of Tishomingo receiver of the Oil Company, who duly qualified as such receiver. On the 3d of November following Judge Townsend removed Kirby Purdom

as receiver, and on the same day appointed B. R. Brundage, who likewise qualified as required by law and took charge of all the assets of the defendant company.

On the 24th day of November, 1903, the Continental Gin Company filed its original plea of intervention alleging that the Tishomingo Oil & Cotton Company was indebted to the intervenor on certain promissory notes; that the notes were given for the purchase price of machinery purchased by the Oil Company from the Gin Company; and that it was recited in said notes that the title, possession, and ownership to said properties does not pass from the intervenor until the notes and interest are paid.

There were further allegations to the effect that the Oil Company was indebted to it upon four promissory notes all payable to its order at Birmingham, Ala., or Dallas Tex., and aggregated the sum of $4,500, exclusive of interest and attorney's fees, said notes being described specifically as to date and maturity; that all the notes were past due and only $50 had been paid thereon; that two of the notes dated January 1, 1902, were executed by the defendant for 6-106 Continental linter feeders and condensers, Inv. No. Br. 559, D. S. P. 239; and that it was recited in said notes that the title, possession, and ownership of the property should not pass from the intervenor Continental Gin Company until the notes were paid in full, and that the two notes dated July 31, 1902, were executed for one 3-70 Saw Munger Sliding Idler Gin outfit complete, with engine, boiler, pump, feeder, and connections, and it was recited in said notes that the title, possession, and ownership should not pass from the intervenor the Continental Gin Company until said notes were paid in full. Copies of the four notes were attached to the plea of intervention. It was also alleged that in all four of the notes it was provided that the intervenor should have full power to declare the same due and take possession of the property at any time it deemed itself insecure even before the maturity of the notes, and that the intervenor deemed itself insecure, and had exercised the option given in the notes, which ma-

tured January 1, 1904, and it declared the same due and payable; that it had become necessary for the collection of said notes and the preservation of the intervenor's right in said property for suit to be brought; and that thereby the defendant became liable to the intervenor in the sum of 10 per cent. of the amount of the notes for attorney's fees, and that the intervenor had sued on the notes and employed counsel for that purpose. The prayer for relief reads as follows:

"Now this intervenor asks that it be given judgment against respondents for the amount due on said notes executed by respondents, and that also an order be entered herein establishing an indebtedness against the property described in said two mortgages executed by said J. D. Ray, who is hereby prayed to be made a party hereto, for the amount still due, including principal, interest, and attorney's fees, on the four notes thereby secured, and that this intervenor's lien and claim upon the property described in said four notes executed by respondent, and said mortgage executed by said J. D. Ray, to be superior to the lien and claim of all other persons, firms, and corporations upon said property. And intervenor further prays that it have final judgment and a decree of foreclosure and sale in such terms and at such times as shall best protect the rights of this intervenor and all other creditors holding liens upon said property above described. And this intervenor further prays for all other general and special relief to which it may be entitled in the premises in any way."

There is no controversy in relation to the four notes executed to J. D. Ray or the mortgages given to secure their payment above mentioned, so they need not be taken into account in this case.

The Gin Company also joined the complainants in a motion which was presented to Judge Townsend, wherein it was alleged that:

"Complainants in said original bill and intervenor the Continental Gin Company, being the movants herein, are the only creditors holding liens upon the said physical effects, and that any deterioration in the value of said property and any expense incurred in keeping the same will occasion loss and charges that will dimin-

ish their security; that they hold valid first liens upon said physical properties, and that they have brought their appropriate bill to foreclose the same; and that said security is likely to be, and will most certainly be, deteriorated and diminished in value, if the same is held in charge of the receiver until the end of the litigation. Movants further show the court that it is now a seasonable time to sell said physical property, and that they are advised and believe that the same can be sold to better advantage within the next 30 days than at a later date, and that such sale will prevent the diminution of their security by waste or expenses of keeping. Wherefore movants pray that the court grant an order directing the sale of the physical property of respondent (defendant) as set out in complainants' original bill, and appoint a commissioner to make said sale in accordance with the deed of trust of the complainants, and all the liens and mortgages of the intervenor set out *in extenso* in complainant's original bill, and that the court do fix an upset price for which the property may be sold, and designate the time and place of sale, and for such other and further orders as in the discretion of the court may be necessary or proper to fully protect the movant's rights and equities herein."

On the 2d day of March, 1904, the Gin Company filed its second amended plea of intervention stating the facts as to the reservation notes practically as in its former plea, but stating that without in any way waiving its rights under its reservation of title notes, it was willing to let the court foreclose them as chattel mortgages if it would inure to the benefit of all the creditors of the Oil Company. The prayer for relief in relation to the reservation notes was as follows:

"Now this intervenor asks that an order be entered herein establishing an indebtedness against the property described in said two mortgages executed by J. D. Ray, who is hereby prayed to be made a party hereto, for the full amount still due, including principal, interest, and attorney's fees, on the four notes thereby secured, and if the court should deem it best and equitable to treat the conditional sale evidenced by said four notes as a mortgage, to give this intervenor judgment for the amount due on said four notes executed by respondent, including principal and interest, together with a foreclosure of the lien securing said four notes on the property therein described, and if the court should deem it best

not to treat said conditional sale as a mortgage, that this intervenor be given judgment establishing its ownership to said property described in said four notes, and ordering the receiver herein to deliver possession of the same to this intervenor, and that this intervenor's lien upon the property described in said mortgage executed by said J. D. Ray be adjudged superior to the lien and claims of all other persons, firms, and corporations upon said property described in said mortgages, and that no other person, firm, or corporation be allowed to acquire any right, title, interest, or claim in and to, or lien upon, said property described in said notes executed by respondents until this intervenor's claims upon said property and rights to said property shall have been fully protected. And this intervenor further prays that it have final judgment, and a decree of foreclosure and sale as to the property described in said mortgages executed by J. D. Ray, and a decree protecting this intervenor's rights in and to said property described in said four notes executed by respondent, and that this court enter such orders as will best protect the rights of this intervenor and of all other creditors holding claims to or liens upon said property above mentioned. This intervenor prays for all other relief, both general and special, to which he may be entitled to in the premises in any way."

On the 19th day of February, 1904, the appellant, the Ardmore National Bank, filed its original plea of intervention claiming a lien on the property in controversy under and by virtue of a judgment against the Oil Company, and execution issued thereon, and liens established by equitable proceedings in the nature of bills of discovery. On the 30th day of March it filed its amended plea of intervention. The judgment of the Ardmore National Bank against the Oil Company on which it bases its right to a lien was rendered on the 31st day of October, 1903, and execution was issued thereon on the 2d day of February, 1904, and returned unsatisfied.

There is no dispute between the parties to this suit in regard to the amounts due from the Oil Company to the various creditors. Nor is there any dispute as to the execution and delivery of the instruments under which the appellees claim liens, nor that they were prior in time to the judgment and proceed-

ings under which the appellant claims a prior lien.  The appellant contends:  First:  That the Gin Company, by its original plea of intervention, and by joining the complainants in their motion to sell the property, had waived its rights under the reservation of title notes; that the Gin Company treated the notes as chattel mortgages, and attempted to foreclose them as a lien upon the property by its original plea of intervention, and the title and ownership thereto became thereby divested out of the Gin Company and passed to the Oil Company; and that the Gin Company having treated the reservation notes as chattel mortgages in its original plea, it was estopped from reasserting title by amended plea, and the notes being unrecorded, they were not available as prior liens against the liens asserted by the appellant.  Second.  That the deed of trust attempted to be foreclosed by the complainants was illegal and void, because it was never legally acknowledged and recorded; that the notary who took the acknowledgment was disqualified and incompetent to take such acknowledgment, for the reason that he was beneficially and financially interested in said deed; that at the time he took the acknowledgment he was a stockholder and a director and treasurer of the Oil Company, the grantor, and owed a considerable sum of money on unpaid stock subscriptions.  The foregoing were substantially the issues presented below, and the trial resulted in a judgment in favor of the complainants and the intervenor the Gin Company, and against the appellant, the Ardmore National Bank.

The general jurisdiction of equity over corporate bodies does not extend to the power of dissolving corporations or winding up their affairs and sequestrating the corporate property and effects, in the absence of express statutory authority.  But in most of the states of this country the general jurisdiction of courts of equity has been enlarged to the extent of authorizing the appointment of receivers in behalf of creditors and shareholders.  These statutes greatly enlarge the powers of the courts of equity over property and management of insolvent, nongoing corporations.

Section 3488 of the Indian Territory Annotated Statutes of 1899, the statute in force in the Indian Territory when this proceeding was commenced, provides as follows:

"Whenever, in any case, a receiver shall be appointed for a corporation or the trustees thereof, or any copartnership or joint-stock company, and the order or decree of the court, judge or chancellor shall be that the lands, tenements, goods, chattels, funds, assets, moneys, credits, choses in action, rights and interests of every kind, and nature, either in law or equity or any part thereof belonging to the same, shall be placed in the hands of such receiver, he shall from thenceforward, until the further order or decree of the court, judge or chancellor, have full possession, custody and control thereof, and shall be vested with the title, so far as it shall be necessary to collect debts, preserve the assets and property for the benefit of creditors and all persons interested, and may and shall bring and prosecute and defend all suits in his own name that may be necessary for that purpose."

It has been held by the Supreme Court of Wisconsin, in *Atchison v. Davidson,* 2 Pin. 48, under a statute similar to the above, that receivers of corporations are appointed for the benefit of the creditors, with power and authority to collect and pay over to them the assets. The choses in action of the corporation are in the possession of the receiver for the creditors, and are to all intents and purposes the property of the creditors. The receiver of an insolvent corporation stands as the representative both of the creditors and the corporation and of its shareholders. He is not therefore the agent or representative of the corporation exclusively, but is regarded rather as a trustee for both creditors and shareholders. *Gillet v. Moody,* 3 N. Y. 479; *Talmage v. Pell et al.,* 7 N. Y. 347; *Libby v. Rosekrans,* 55 Barb. (N. Y.) 202; *Alexander v. Relfe,* 74 Mo. 495; *Angell v. Silsbury,* 19 How. Prac. (N. Y.) 48. The receiver of an insolvent, non-going corporation takes the property of the company for the creditors, subject to such equities, liens, or incumbrances, whether created by operation of law or by act of the corporation, which existed against the property at the time of his appointment.

It is admitted by all the parties to this suit that at the time

the receiver was appointed the Oil Company was an insolvent, non-going corporation, and that the property described in the reservation notes was the property of the Gin Company. The appellant concedes this, but insists that after the receiver was appointed the Gin Company lost its place of vantage by treating its reservation notes as chattel mortgages, and not complying with the registration law governing such instruments. Under the laws of Arkansas an unrecorded chattel mortgage is good between the parties, and, if we are right on the proposition that the possession of the receiver is the possession of the creditors, it must follow that, even treating these reservation notes as chattel mortgages after the property came into the hands of the receiver, would avail the appellant nothing.

"A chattel mortgage, though not filed for record, is a valid security between the parties; and when, by virtue of it, the mortgagee takes possession of the mortgaged property after condition broken, this is an appropriation of it to the debt secured, and his title is good against a creditor of the mortgagor who subsequently attaches the property in his possession." (*Applewhite v. Harrell Mill Co.,* 49 Ark. 279, 5 S. W. 292.)

The receiver's title and right to possession of the property of an insolvent, nongoing corporation vests from the date of the original order for the appointment, although the proceedings may not be perfected until a later date. The receiver's title and right to possession during the interval between such original order and the time of perfecting his appointment are superior to those of a judgment creditor who levies upon the property under his judgment during such interval. High on Receivers, § 136; *Rutter v. Tallis,* 5 Sandf. (N. Y.) 610; *Steele v. Sturges,* 5 Abb. Prac. 442. We do not believe, however, that the acts of the Gin Company amounted to a waiver of any of its rights under its reservation notes. It was within the power of the court to grant the Gin Company the relief it did under its original plea of intervention. In both pleas it stated the facts in substantially the same language, showing to the court the exact circumstances surrounding the transaction. It

is true that in the original plea the Gin Company asked to have its lien under its reservation notes foreclosed. But it also asked for such other and further orders as in the discretion of the court may be necessary and proper to protect its rights and equities, which, in effect, amounted to a prayer of general relief. In its amended plea it expressed a willingness to have the property covered by its notes sold and the notes treated as chattel mortgages, if the court found that it would be to the advantage of all the creditors to do so, and closes its plea with a prayer for general relief. Under a prayer for general relief the court may grant any relief that the facts stated will warrant, although such relief be inconsistent with the special relief prayed for. *Cook v. Bronaugh*, 13 Ark. 187; *Kelly v. McGuire,* 15 Ark. 555; *Shields v. Trammell,* 19 Ark. 62; *Chaffe & Bro. v. Oliver and Wife,* 39 Ark. 531. In *Cook v. Bronaugh, supra,* the Supreme Court of Arkansas says:

"Where there is a prayer for specific relief, and also a general prayer for relief, if the state of case as presented by the bill should not be sustained in evidence, or the court should, upon principles of equity, refuse the specific relief, it may, notwithstanding, give to the complainant under his general prayer any relief warranted by the facts as set forth in his bill."

From an examination of the record it is quite obvious why the Gin Company and the other lien-holders, including the appellant herein, were willing to have the property sold in bulk by the receiver. The following is taken from an agreed statement of facts signed by the attorneys for the complainants, the attorneys for the Gin Company, and the attorneys for the Ardmore National Bank (this part of the agreement has relation only to the property in dispute between the Gin Company and the appellant):

"Ninth. It is agreed that the property described in said four notes executed by the defendant to the Continental Gin Company was used in the proper operation of an oilmill, and that it is usual and customary for an oilmill to own gins in connection with their business, and that the property of the defendant, taken as a whole, was worth more than would have been the aggregate value of the different portions of said property taken separately. Tenth.

It is agreed that all the property described in the complainants' amended complaint and in said plea of intervention of the Continental Gin Company has been sold in this case under an order of the court, and that it was purchased by Sam Davidson, and that said property brought more at said sale than it would have brought had the property described in said two notes for $1,500 each been sold separately, and had the property described in said two $750 notes been sold separately, and had the other property described in complainant's bill been sold separately, and that it was for the benefit of said defendant that the property described in complainant's complaint and mortgage and in said second amended plea of intervention of Continental Gin Company was sold together and as a whole. * * * Fourteenth. It is agreed that in the sale to Sam Davidson above mentioned the property described in said two notes executed by defendant to the Continental Gin Company for principal sum of $1,500 each brought $3,500, and the property described in said two notes for principal sum of $750 each brought $2,000, and that in the event the Ardmore National Bank shall prevail in this suit said sums may be taken as a basis in determining the priority of the liens and rights thereto."

Under the circumstances disclosed by the agreed statement of facts it was natural that all parties who hoped to establish liens against the property should insist on it all being sold together. It cannot be said that the Gin Company by agreeing to this arrangement, which would have the effect of being to the advantage of the other creditors, would work a forfeiture of its own rights. Where a vendor, after the appointment of a receiver to take charge of the property and affairs of an insolvent, nongoing corporation, files its pleas of intervention setting up all the facts in relation to certain reservation of title notes taken by the vendor for sales of machinery to the insolvent corporation, and further alleges that the reservation notes are liens on the property, and prays for their foreclosure, and also prays for general relief, this is not such an election as will preclude the intervenor from afterwards amending its plea of intervention, and asserting title and right to possession of the property described in the reservation notes as against one who claims to have a lien thereon subsequent in time to the reservation notes, where such lien, if it attached to the property at all,

came into existence after the property fell into the hands of the receiver, notwithstanding the reservation notes were not filed as chattel mortgages.

On the question of the illegality of the acknowledgment to the deed of trust we are of the opinion that the acknowledgment of a deed of trust executed by a corporation grantor to secure payment of certain promissory notes is a ministerial act. Where such an instrument is acknowledged before a notary public, who was at the time a director and treasurer of the grantor corporation and also indebted for unpaid subscriptions to its stock, which facts were known to the grantor, but there was nothing on the face of the instrument or acknowledgment indicating such relationship, the deed of trust was entitled to registration, and the registry thereof was notice to subsequent purchasers, incumbrancers, or lienors.

The correct rule is laid down in *Bank v. Conway*, 17 Fed. Cas. 1203, where it is held that, where the acknowledgment is regular and fair on its face, no hidden interest of the notary can be proved to impeach its validity. It is against the policy of recording acts to hold an acknowledgment void because of the secret interest of an officer taking and certifying it. The effect should be to prevent rather than allow hidden defects in the evidence of public records.

The same question was involved in *Morrow v. Cole*, 58 N. J. Eq. 203, 42 Atl. 673. In this case (*Morrow v. Cole*) the chancellor in his opinion says:

"It is held in a number of cases that, if it appear on the face of the deed that the officer is either a party thereto, or a *cestui que trust* named therein, the acknowledgment is void and the record not notice. *Wilson v. Traer & Co.*, 20 Iowa, 231; *Bowden v. Parrish*, 86 Va. 68, 9 S. E. 616, 19 Am. St. Rep. 873; *Wasson v. Connor*, 54 Miss. 351. Some *dicta* go further, and assert that the interest of the acknowledging officer, whether it appear upon the face of the deed or not, will render the acknowledgment a nullity. *Groesbeck v. Seeley*, 13 Mich. 345; *Willis v. Woods*, 28 Kan. 411. These *dicta* cannot be supported. Aside from the case of a married woman, as to which it is not necessary to express an opinion. it appears to me very plain that if the interest does not appear on the face of the deed the record is notice.

"The complainant's contention is that the officer who takes an acknowledgment performs a judicial act and that as no man can be a judge in his own case, such act, if done by one interested, is void. This contention is unsound. The act is no more judicial than ministerial. A judicial act ordinarily has reference to some controversy. There is nothing suggestive of controversy in an acknowledgment. It is said that the officer must be satisfied that the person who appears before him is the grantor, and that his determination that he is is a judicial act. But the duty of identifying people, of being satisfied that they are what they claim to be, is discharged by all sorts of administrative officers—for example, by a treasurer who pays out money—and not only by officials, but at times by every member of the community. It may as well be predicated of the act, then, that it is ministerial as that it is judicial. Nothing else that the officer does has even the semblance of judicial action. He makes known the contents of the paper. He hears the grantor say that he signs it as his voluntary act and deed, and then he makes a written certificate of the facts.

"If the act of the officer is not judicial, the doing of it is not adjudging one's own case. If the grantor takes his own acknowledgment, it is of no effect, because it is obviously contrary to the provisions of our statute on the subject. If the grantee takes the grantor's acknowledgment, it cannot be said perhaps that any express provision of the statute is violated, but the act nevertheless is void, not because we have here an instance of a judge deciding his own case, but because the same public policy which prevents an interested judge from acting, will (with certain reservations) prevent an interested master or commissioner. The distinction is important in this respect. The decisions of judges should always be above suspicion. To insure this result the judges themselves should be absolutely free from the bias of self-interest, and the rule of public policy should be rigidly enforced. To apply it as rigidly to the case of commissioners, whose public functions are so different, would work little benefit, and would lead to results antagonistic to the policy of the registry laws.

"It may be safely asserted that it would be much more injurious to public interests to hold that extraneous proof of an undisclosed or secret interest (almost always slight) would avoid acknowledgments, and thus render the record of conveyances unreliable, than it would be to hold the contrary. Says Chief Justice Waite in *National Bank of Fredericksburg v. Conway*, 17 Fed. Cas.

1203 : 'It is against the policy of the recording acts to hold an acknowledgment void because of the secret interest of an officer taking and certifying it. The effort should be to prevent rather than allow hidden defects in the evidence of public records.' Accordingly he held the acknowledgment under review in that case to be a ministerial act and the record notice. Such was also the decison in *Lynch v. Livingston,* 6 N. Y. 422, and *Kimball v. Johnson,* 14 Wis. 674. Both reason and authority concur in declaring where the interest of the acknowledging officer does not appear on the face of the deed that the acknowledgment is not void and that the registry of the deed is notice.

"In *Wright v. Wells,* 12 N. J. Law. 132, *Marsh v. Mitchell,* 26 N. J. 497, affirmed, 26 N. J. Eq. 631, and *Homeopathic Mutual Life Insurance Co. v. Marshall,* 32 N. J. Eq. 110, the question related to the effect to be given to the declarations contained in the acknowledgment of a married woman—how far they were disputable. In the last of these cases Chancellor Runyon, dissenting in a measure from the view expressed in the previous cases, was of opinion that the act of the officer in ascertaining whether the married woman executed the conveyance of her own free will, without threats and coercion, was a judicial act. Perhaps with more accuracy it might be designated quasi judicial. *Hitz v. Jenks,* 123 U. S. 302, 8 Sup. Ct. 143, 31 L. Ed. 156. Whether judicial or not, it is manifest that these decisions do not touch the present case. They do not deal with the question of notice. I think the registry of the mortgage was notice, and that therefore it is a lien prior to the judgment."

Another case (*Read v. Toledo Loan Company,* 68 Ohio St. 280, 67 N. E. 729, 62 L. R. A. 790, 96 Am. St. Rep. 663) to the same effect is probably more in point. In the Ohio Case the mortgage was witnessed by two stockholders of the corporation grantee, and acknowledged before a notary public also a stockholder of the grantee corporation. The Supreme Court of Ohio says:

"In the case at bar it is admitted that Cary D. Lindsay, the assignor, at the time he acknowledged this mortgage, knew of the relation the notary, Grant Williams, sustained to the Toledo Loan Company, and knew that he was then the holder of two shares of stock in said company; and there is in this case no imputation or charge of improper conduct or bad faith or undue advantage arising out of such interest or relationship, nor is there any claim but

that the acknowledgment was freely and fairly made, in the honest belief that it was in all respects authorized and sufficient. To hold, then, under such circumstances, that the mortgage here in controversy was invalid, unless impelled thereto by statutory requirement or the plainest considerations of public policy, would, it seems to us, be a subversion of justice, and would be contrary to the plainest principles of equity and fair dealing."

In the case of *Cooper v. Building and Loan Association*, 97 Tenn. 285, 37 S. W. 12, 33 L. R. A. 338, 56 Am. St. Rep. 795, the court says:

"There is quite a conflict of authority and diversity of holding in the different states upon the question of whether the act of taking an acknowledgment to a deed or other instrument is a ministerial or judicial act. It has been held to be a ministerial act in the United States courts, and in the courts of Arkansas, Georgia, Illinois, Kentucky, Maine, Massachusetts, Minnesota, New Hampshire, New York, Maryland, and Ohio. In these states it is held that an officer may take acknowledgment though related or interested, or a party."

In *Penn v. Garvin*, 56 Ark. 513, 20 S. W. 410, the Supreme Court of Arkansas holds that the formality of acknowledgments is designed for the protection of grantors, and that relationship to the grantor on the part of the officer taking the acknowledgment of the grantor does not invalidate the acknowledgment.

The case of *Leonhard v. Flood,* 68 Ark. 162, 56 S. W. 781, is quite dstinguishable from the case at bar. In the *Flood Case* the notary taking the acknowledgment was a surety on the note secured by the mortgage he acknowledged. In such a case the interest of the notary is proximate and obvious, whereas in the case at bar the interest of the notary, if interest he had, was remote and speculative. Besides, the *Flood Case* as authority on this point is considerably weakened by a strong dissenting opinion by Mr. Chief Justice Bunn, who after a review of the authorities says:

"The only case I have been able to find which definitely carries the rule beyond the parties to the instrument is *Wilson v. Traer,* 20 Iowa, 231, and that has little or no support, even from the authorities cited."

Finding no substantial error in the proceedings of the court below, its judgment is affirmed.

Dunn, Hayes, and Turner, JJ., concur; Williams, C. J., not sitting.