16387

NATIONAL CASH REGISTER CO. v. BURNS

(60 S. E. (2d) 615)

312

*Messrs. Love, Thornton & Blythe,* of Greenville, *for Appellant,*

*Messrs. Williams & Henry,* of Greenville, *for Respondent,*

July 19, 1950.

STUKES, Justice.

Star Cleaners and Laundry, an unincorporated firm, is in an *operating* receivership in the Greenville County Court.

Prior to appointment of the receiver National Cash Register Company had sold the Laundry two cash registers upon title retention, installment contracts, which are properly considered by the parties as chattel mortgages and the validity of them as liens is unquestioned. The stipulated monthly payments aggregated $105.00 and the total of the unpaid installments was $1,077.00. The order of receivership was issued on March 23, 1949, enjoined other actions against the Laundry and required all creditors to establish their claims in the receivership, which the Company did. Without notice to it the court passed an order on Oct. 13, 1949, that payments of $50.00 only should be made to the Company monthly, commencing Oct. 15, 1949. The Company thereupon petitioned for possession of the machines in accord with the contracts and amended at the hearing to ask in the alternative for a sale of the mortgaged property by the receiver in foreclosure of the liens. The petition was denied by order dated Jan. 10, 1950, but the former order was modified by direction to the receiver to pay petitioner five per cent (presumably per annum), quoting, "on the decreasing monthly balance due it."

The Company appealed upon the broad grounds that the effect of the order was to unconstitutionally impair the obligations of the contracts and deprive it of its property without due process of law. The receiver, who is now respondent, has contested the stated grounds by oral argument and printed brief. He apparently conceives that the matter was wholly within the discretion of the court, which we think mistaken because it practically ignores, certainly seriously impairs, the lien rights of appellant.

A primary concept of the law of receivers is that a receiver stands in the shoes of the debtor with respect to the property of the latter and in his possession it is subject to valid liens and other contractual obligations. Our cases are collected in 29 S. E. Dig. p. 36. Receivers, Par. 69. "The general rule is that the appointment of a re-

ceiver will not change any existing contractual relation or create any new contractual relation or right of action thereon, and a receiver can do nothing to impair a contract as between the parties thereto." 45 Am. Jur. 117. "While it is well settled that property in receivership cannot be levied on or sold under execution or in the enforcement of a mortgage, mechanic's lien, or other lien, without leave of the court, it is equally clear that in proper cases such leave can be given. A court of equity is not required to retain possession of property when it would be inequitable to do so." 45 Am. Jur. 134.

A somewhat similar case is *Sumner Iron Works v. Wolten,* 61 Wash. 689, 112 P. 1109, 1110, in which the receiver objected to the enforcement of a conditional sales contract and the lower court sustained him. The appellate court reversed and said: "It would have been the court's duty to thereupon inquire into the demand, and, if it found it well taken, to order the receiver to comply therewith and surrender the machinery, or pay the balance due. The receiver could obtain no better or different title or claim to the machinery than the insolvent lumber company. Its rights were his rights; no more, no less. The adjudication of the insolvency of the lumber company and the appointment of a receiver in no wise established any lien upon this machinery. It remained with the receiver as with the lumber company, subject to the assertion of appellant's title because of the default in the deferred payments. *York Manufacturing Co. v. Cassell,* 201 U. S. 344, 26 S. Ct. 481, 50 L. Ed. 782; *Risk v. Kansas Trust & Banking Co.,* C. C., 58 F. 45; *Ardmore Nat. Bank v. Briggs M. & S. Co.,* 20 Okl. 427, 94 P. 533, 23 L. R. A., N. S., 1074, 129 Am. St. Rep. 747 [16 Ann. Cas. 133]. The appointment of a receiver could not give the lumber company any additional contractual rights, nor deprive it of any old ones. Nor was the filing of this claim in the receivership case any waiver of any right granted appellant under the contract. Its debtor by the order of the court had been deprived of its possession of the machinery,

and it was right and proper to pray the court which had, by its adjudication of insolvency and appointment of receiver, assumed jurisdiction over all property and property rights of the insolvent debtor to uphold the contract and enforce its rights."

To the same effect and in point for reversal here are *Clow Gasteam Heating Company v. Hixon,* Tex. Civ. App., 67 S. W. (2d) 619, and *In re Receivership of Augusta Sugar Co., Limited,* 134 La. 971, 64 So. 870, 872. From opinion in the last cited is the following: "The learned counsel for the receiver argue also that the sugarhouse will be disabled by the removal of this machinery. No doubt of that; but that result is merely the legal consequence of the machinery not having been paid for. In all the cases cited above and in all others where the vendor was allowed to assert his privilege or other rights upon machinery forming part of an operating plant, the effect was to disable the plant; but it never occurred to any one that this result was an obstacle to the enforcement of the vendor's legal rights."

Respondent cites *Cleveland, Receiver, v. McCravy,* 46 S. C. 252, 24 S. E. 175, which held ineffective the effort of a sheriff to levy under an execution for taxes upon property in a receivership; and that is our rule which is founded upon the *ratio decidendi* of the closely preceding case of *In re Tyler,* 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689, which, quite interestingly, also originated in this State and was likewise concerned with the action of a too zealous sheriff. Although followed by the majority of the courts, it is not a universal rule. See annotation in 3 A. L. R. (2d) 893 and the subject New York decision. Also cited by respondent is *Freeman Brown Company v. Harris, Receiver,* 88 S. C. 558, 70 S. E. 802, 803, which involved unsuccessful effort of a creditor to take possession of property in a receivership over which plaintiff held a lien. In the opinion it was enlighteningly said, and we quote at length: "They (the property) were in the actual possession and custody of the re-

ceiver, who held them for the benefit of all concerned. There are cogent reasons why a creditor, who has only a lien upon goods, should not be allowed to take them out of the hands of a receiver. One of the purposes of a receivership is that the assets shall be held in impartial hands, that the proceeds may be administered according to the priorities of the claims thereto. This purpose would be thwarted if every creditor who has a lien upon a particular asset is allowed to take it out of the hands of the receiver and administer it himself. The receiver might thereby be driven to numerous suits for accounting for any surplus in the hands of such creditors, after satisfaction of their liens, and the estate would be squandered in useless litigation, which it is one of the objects of a receivership to avoid. The plaintiff could have established its lien and had the benefit thereof in the parent suit", which latter, we add, is all that appellant seeks in the instant litigation.

Our cases which have been cited merely illustrate the rule that a court which creates a receivership usually draws to itself jurisdiction over all controversies concerning the assets and liabilities of the debtor in receivership and is ordinarily the exclusive forum for the adjudication of them, unless leave of that court be granted to the creditor or receiver to proceed elsewhere. However, there is no power in the court to alleviate contractual obligations. It was said in the leading *Tyler case, supra,* as follows : "No rule is better settled than that, when a court has appointed a receiver, his possession is the possession of the court, *for the benefit of the parties to the suit and all concerned * * *.*" [149 U. S. 164, 13 S. Ct. 789] (Emphasis added.) This court has heretofore hewn to the line of constitutional enforcement, without impairment, of the obligations of contracts, which is well illustrated by the case of *Federal Land Bank of Columbia v. Garrison,* 185 S. C. 255, 193 S. E. 308; *certiorari* denied, *Ordnance Engineering Corp. v. U. S.,* 302 U. S. 708, 58 S. Ct. 28, 82 L. Ed. 547.

Receivership may affect procedure upon, but not the substance of, contract obligations. The following is from 1 Clark on Receivers, 2nd Ed. 946, sec. 668. "The appointment of a receiver over property which has liens against it does not destroy such liens. Nevertheless such an appointment may affect the remedy which the lienholder has to enforce such liens." * * * And that is the situation here; appellant is confined for its remedy to the forum of the receivership but the court should not in the name of equity or discretion prevent enforcement of the liens. The legal right to enforcement here has already been suspended unduly long by the receivership.

Further from Clark is the following, Vol. 2, p. 1394, sec. 976: "Although leave should be had by the Court appointing the receiver for authority to bring a foreclosure suit, nevertheless, a refusal to allow such an action may amount to a violation of the mortgagee's right. * * * The Federal and State Constitutions forbid the impairment of the obligations of contracts and this inhibition extends to the remedies specified in the contract which become a part of the obligation, and without consent cannot be altered, defeated or otherwise affected, by subsequent legislation or by the judgment or decree of a judicial tribunal."

Undoubtedly discretion exists in a court with respect to the administration of property in receivership but the exercise of it is subject to constitutional limitations which we think were violated in this instance. It is unjust and therefore inequitable to longer deny appellant the right to enforcement of its liens.

The order appealed is reversed and the case remanded for further proceedings consistent with the views herein expressed.

BAKER, C. J., and TAYLOR, J., concur.

FISHBURNE and OXNER, JJ., dissent.

OXNER, Justice (dissenting).

The result of the majority opinion is that in a receivership proceeding, a holder of a past due chattel mortgage is entitled either to the possession of the property mortgaged or to an order requiring the receiver to immediately sell same for the purpose of satisfying the debt, notwithstanding the fact that there may be considerable equity in the property and the rights of the mortgagee are fully protected by the Court pending the liquidation of the assets. It is said that a Court of Equity has no discretion in the matter because every right of the lienholder denominated in the bond must be rigidly enforced. The disastrous effect of such a rule on the orderly and just administration of receiverships in this State is apparent. Neither sound reason nor authority justifies such a harsh doctrine.

No one questions the general rule that the appointment of a receiver does not change any existing contractual relations or disturb valid liens but, on the contrary, all such liens are recognized and preserved. But that is far from saying that the parties are left to the same remedies as existed before the jurisdiction of the Court attached and that such lienholders may proceed to enforce their liens or contracts in the manner prescribed in the instruments creating them. The remedy may be altered without impairing the obligation of the lienholder's contract so long as adequate provisions are made by the Court for the protection of his rights. Everyone who takes a mortgage takes it subject to the contingency that a receivership proceeding or a proceeding in bankruptcy against his mortgagor may deprive him of the specific remedy which is provided for in his contract. As stated by the Court in Re Wagoner, D. C., 206 F. 789, 792: "There is no principle more uniformly recognized and rigidly enforced by the courts than that valid liens, untainted by fraud, shall not be disturbed by the institution of bankruptcy proceedings. But this has reference entirely to the validity and obligation of the contract, and not to the remedies for enforcing the lienholder's rights. These can be changed without impairing the obligation of the contract."

The receiver represents no particular creditor. It is his duty to manage the property and administer the estate for the best interest of all parties. It is not infrequent that some of the assets are mortgaged or subject to other liens. Ordinarily if the amount of the lien exceeds the value of the property, it should be relinquished to the lienholder or sold to satisfy his debt. But where there is a substantial equity, the Court has broad powers in determining when and how the property shall be sold so as to protect the interests of all creditors, both secured and unsecured. There are occasions when sound principles of equity require that a sale be effected and the proceeds administered by the receiver under the supervision of the Court rather than by some secured creditor whose only concern is the satisfaction of his own claim. *Western Powder Mfg. Co. v. Interstate Coal Co.,* D. C., 13 F. Supp. 77.

The foregoing principles were recognized by this Court in *James Freeman Brown Co. v. Harris, Receiver,* 88 S. C. 558, 70 S. E. 802. In that case a receiver was appointed for a cotton mill and creditors called in. A secured creditor brought an action against the receiver to recover possession of 189 bales of cloth, produced by the mill and which had been consigned and pledged to said creditor as security for money advanced thereon. In holding that this creditor, although having a lien on the goods, was not entitled to recover possession from the receiver, the Court said "They were in the actual possession and custody of the receiver who held them for the benefit of all concerned. There are cogent reasons why a creditor who has only a lien upon goods, should not be allowed to take them out of the hands of a receiver. One of the purposes of a receivership is that the assets shall be held in impartial hands, that the proceeds may be administered according to the priorities of the claims thereto. *This purpose would be thwarted if any creditor who has a lien upon a particular asset is allowed to take it out of the hands of the receiver and administer it himself. The receiver might thereby be driven to numerous suits for ac-*

*counting for any surplus in the hands of such creditors, after satisfaction of their liens, and the estate would be squandered in useless litigation, which it is one of the objects of a receivership to avoid."* (Italics mine.)

The precise question before us was passed upon by the Court of Appeals of Ohio in *Frye v. MacWilson,* 39 Ohio App. 158, 177 N. E. 232. In that case the assignees of a past due mortgage on a hearse brought an action against the receiver of the mortgagor, an undertaking establishment, for the possession of a hearse. The plaintiffs contended that as a matter of law they were entitled to the possession of the mortgaged property immediately upon default in payment. In denying the right of the assignees of the mortgage to immediate possession, the Court said: "The law seems to be that the appointment of a receiver for the mortgagor may or may not affect this right. It seems to be clear that although such a receivership is ordinarily not permitted to interfere with the priority of the mortgage lien it may quite properly affect the method by which such lien may be asserted, especially in cases in which the evidence does not show that the value of the mortgaged property is less than the unpaid portion of the debt. In other words the mortgagee may be required to file his claim with the receiver and allow the property to remain *in custodia legis,* so that the receiver may have the opportunity of attempting to effect a sale for an amount in excess of the mortgage debt, and thereby realize something for the benefit of other creditors as well as paying in full any valid claim of the mortgagee."

The facts in the instant case are: In September, 1948, the Star Cleaners and Laundry purchased a cash register from the National Cash Register Company for $640.00, making a down payment of $110.00 and securing the balance of $530.00 by a title retention contract or chattel mortgage, to be paid in monthly installments of $45.00. There remains unpaid the sum of $350.00. In January, 1949,

another cash register was purchased for $1,227.00, a down payment made of $485.00 and the balance of $742.00 secured by a similar lien, payable $60.00 monthly. The balance due on this paper is $727.00.

In March, 1949, a receiver was appointed for the Star Cleaners and Laundry with authority to temporarily operate said business as a going concern. It appears that the business was operated at a profit. On October 13, 1949, the receiver was directed to pay $50.00 per month on the mortgages held by the National Cash Register Company. Under this arrangement these mortgages would have been paid in full in a little less than two years. From the net operating income, the Court also authorized payments to be made on various other secured claims. The National Cash Register Company declined to accept the above monthly payments and in December, 1949, filed a petition asking for immediate possession of the cash registers. A hearing was had and by order dated January 10, 1950, the petition was refused but the receiver was directed to pay to petitioner, in addition to the monthly payments above mentioned, 5% on the decreasing monthly balances. Petitioner's general manager testified that the life of these machines was approximately ten years. The receiver alleged in his return that petitioner had agreed to enter into a new contract providing for the payment of its indebtedness in monthly installments of $60.00, provided a carrying charge of $105.12 was paid. The payments authorized by the Court were only slightly less than the payments contemplated by this proposal.

There is no showing by petitioner that its indebtedness represents the full value of the cash registers. It is reasonable to infer that there is a substantial equity. *There is no contention by petitioner that the payments authorized by the Court should have been larger or that there was otherwise any abuse of discretion.* Petitioner's sole contention is that the Court had no discretion except to surrender the property

or authorize an immediate sale to pay its indebtedness. I do not think this contention is tenable.

The suggestion is made that petitioner should have been given notice and an opportunity to be heard by the Court on the question of authorizing the payment of its indebtedness in monthly installments. This question is academic, however, in view of the fact that petitioner was later fully heard on the matter.

I would affirm the order of the lower Court.

FISHBURNE, J., concurs.