602 S.E.2d 83

**SHAPEMASTERS GOLF COURSE BUILDERS, INC.,
James Michael Harbin, Joseph Cagle and Benton
Marc Burger, Respondents,**

**v.**

**SHAPEMASTERS, INC., Jeffrey Stein and Lilly
Jayawant a/k/a Lilly Stein, Appellants.**

**No. 3851.**

Court of Appeals of South Carolina.

Submitted April 6, 2004.

Decided Aug. 2, 2004.

Rehearing Denied Sept. 23, 2004.

Adam Fisher, Jr., of Greenville; Charles Craig Young, of Florence; and Jonathan P. Kresken, of North Myrtle Beach, for Appellants.

Michael R. Daniel and M. Anthony Stith, Jr., both of Mt. Pleasant, for Respondents.

BEATTY, J.

Shapemasters, Inc., Jeffrey Stein and Lilly Jayawant, a/k/a Lilly Stein ("Appellants") appeal various aspects of the trial court's order in favor of Shapemasters Golf Course Builders, Inc., James Michael Harbin, Joseph Cagle, and Benton Burger ("Respondents"), in this shareholder derivative action. We affirm.

## FACTS

In 1993, Respondents James Harbin and Joseph Cagle, together with Appellant Jeffrey Stein, established Shapemasters, Inc. ("S.C.Corp."), a South Carolina corporation engaged in the business of golf course construction. In 2001, the same parties established Shapemasters Golf Course Builders, Inc. ("N.C.Corp."), a North Carolina corporation for the same purpose.

Respondents Cagle and Harbin ceased active involvement in S.C. Corp., and only remained associated with the company as shareholders. At that point, Appellant Jeffrey Stein operated S.C. Corp. and Respondents Harbin, Cagle, and Burger operated N.C. Corp. Appellants claim Stein, Harbin, and Cagle

own S.C. Corp., and Harbin, Cagle, Burger, and Stein own N.C. Corp.[1]

In December 2001, Respondents commenced this action against Appellants asserting several causes of action. Appellants answered and counterclaimed seeking, in part, an accounting, stock buy out, and a temporary restraining order.

Both parties filed motions for the appointment of a custodian to protect the assets of the various companies while the case was being litigated. Respondents agreed to the appointment of a custodian for N.C. Corp., but Appellants objected to a custodian being appointed for S.C. Corp. on grounds that such an appointment would be unduly costly and burdensome.

The trial court found that Respondents successfully made a prima facie case to justify the appointment of a custodian to oversee S.C. Corp. The court granted Respondents' request for an appointment in an order dated July 15, 2002. The court's order delineated the responsibility of the custodian, including that he or she should assemble and review both of the companies' financial statements, seek to maximize profits, and serve bi-monthly income and expenditure reports on attorneys for each party.

Appellants filed a motion to alter or amend the July 15, 2002 order. In addition, Appellants filed supplemental motions seeking the withdrawal of the court's July 15, 2002 order, referral to a master-in-equity, the termination of discovery, elimination of a custodian for S.C. Corp., restraining orders preventing anyone from competing with the two companies or obtaining employment with a competitor, restraining order preventing Respondents from using the name or logo "Shapemasters" in their business dealings, eliminating any commingling of assets between the two companies, and the designation of a CPA to audit the companies.

In response to these motions the trial court issued a second order dated December 21, 2002. This order vacated the court's July 15, 2002 order. The court ordered mediation and referred the case to a master-in-equity with the reservation

---

1. Respondents aver that prior to the establishment of N.C. Corp., Burger became a 25% shareholder in S.C. Corp. Accordingly, Respondents assert the four partners own equal 25% interests in both companies.

that the master should report any jury matters. The court also ordered an audit going back to 1996, denied Appellants' request to eliminate the need for a custodian, appointed Richard E. Heath as the custodian, denied Appellants' request to end discovery, and denied Appellants' requests that Respondents be restrained from working for competitors. As to the use of the name and logo "Shapemasters," the trial court specifically reserved ruling on the issue, stating that the master should address it in his final order. This appeal followed.

## ISSUES[2]

I. Is the denial of a restraining order immediately appealable?

II. Did the trial court err in refusing to grant Appellants' motion for a restraining order?

III. Is the appointment of a custodian immediately appealable?

IV. Did the trial court err in appointing a custodian to oversee operations?

## LAW/ANALYSIS

### I. Restraining Order

■ Appellants first assert the trial court erred in refusing to grant Appellants' motion for a restraining order with regards to the use of the "Shapemasters" name and logo and regarding Cagle's, a Respondent in this matter, employment with a direct competitor. We disagree.

■ Appellants correctly argue that the refusal to grant a restraining order is immediately appealable. "An order or decree in a court of common pleas granting, continuing, modifying, or refusing an injunction is immediately appealable." S.C.Code Ann. § 14–3–330(4); *see also Appeal of Paslay*, 230 S.C. 55, 64, 94 S.E.2d 57, 61 (1956) (appeal lay from the

---

2. Appellants state a total of seven issues on appeal. However, we feel that most of the issues may be condensed into four issues for our consideration. Appellants' remaining issues are unsupported by authority and are deemed abandoned.

restraining order or temporary injunction). However, we must first determine whether the issue is preserved for appellate review.

Appellants further argue the trial court erred in refusing to grant an injunction regarding the use of the name Shapemasters as the company logo and name. Appellants argue that Cagle and other Respondents in this matter are not only using the company name, but also working with a direct competitor.

■ The trial judge did not rule on the use of the Shapemasters name and logo issue. Further, Appellants failed to pursue a Rule 59 motion on the December 2002 order; therefore, the issue is not preserved for review.[3] Moreover, we believe Appellants' arguments are without merit. Appellants consented to the use of the name and logo when they established N.C. Corp. N.C. Corp. has been conducting business under the Shapemasters name since its formation in 2001. To require N.C. Corp to cease the use of the name and logo during the pendency of this action would disrupt business and have an unduly negative impact on N.C. Corp. Appellants and Respondents are shareholders in N.C. Corp. and will share any profits generated by N.C. Corp.

■ Additionally, Appellants have failed to show irreparable harm with regards to Appellants' employees working for competitors. *See FOC Lawshe Ltd. P'ship v. Int'l Paper Co.,* 352 S.C. 408, 416, 574 S.E.2d 228, 232 (Ct.App.2002) ("Generally, to obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and an inadequate remedy at law."). The fact that Appellants' employees occasionally work for direct competitors is not unduly harmful to Appellants as there is no evidence in the record that the employees acquired, or attempted to acquire, any business for the competitor. In fact, the record reflects that

---

**3.** *See I'On v. Town of Mount Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (stating parties should raise all necessary issues and arguments to trial court and attempt to obtain a ruling); *Townsend v. City of Dillon,* 326 S.C. 244, 486 S.E.2d 95 (1997) (holding issues not ruled upon by the trial judge are not preserved for appellate review); *Noisette v. Ismail,* 304 S.C. 56, 403 S.E.2d 122 (1991) (ruling issue was not preserved for appellate review where the trial court did not explicitly rule on the appellant's argument and the appellant made no Rule 59(e) motion to alter or amend the judgment).

the employees' function for competitors is one of providing labor as heavy machine operators. Accordingly, we find no error in the trial court's ruling.

## II. Appointment of Custodian

■ Appellants next assert that the appointment of a custodian is immediately appealable and that the trial court erred in appointing a custodian to manage the daily operations of the company's affairs. Appellants assert that the appointment of a custodian has the same effect as the appointment of a receiver. *See* S.C.Code Ann. § 14–3–330(4) (stating an appellate court has jurisdiction to review an interlocutory order refusing the appointment of a receiver). We disagree.

Receivers and custodians are distinguishable. A receiver's duty is to wind up and liquidate the business and affairs of a corporation, while custodians manage the affairs of the corporation. *See* S.C.Code Ann. 33–14–320 (Supp.2003). A receiver, in performing its duties, may:

[D]ispose of all or any part of the assets of the corporation wherever located, at a public or private sale, if authorized by the court; and (ii) may sue and defend in his own name as receiver of the corporation in all courts of this State.

However, a custodian may:

[E]xercise all of the powers of the corporation, through or in place of its board of directors or officers, to the extent necessary to manage the affairs of the corporation in the best interests of its shareholders and creditors.

S.C.Code Ann. § 33–14–320(c)(2).

■ "One of the purposes of a receivership is that the assets shall be held in impartial hands, that the proceeds may be administered according to the priorities of the claims thereto." *National Cash Register Co. v. Burns,* 217 S.C. 310, 316, 60 S.E.2d 615, 618 (1950). The refusal of a trial court to appoint a receiver should be immediately appealable because of the potential harm in not having an unbiased party to protect a corporation's assets. We do not believe the same level of harm attends an order to appoint a custodian. The custodian in this matter was appointed specifically for the purposes of "overseeing ongoing projects and to allocate man and machinery among the proposed projects to maximize

profits." The trial court did not commit error in appointing a custodian and assigning him with the aforementioned duties. Additionally, we do not believe the term receiver, as set forth in section 14–3–320(4) has the same effect as the term custodian. Therefore the court's order to appoint a custodian is interlocutory and not immediately appealable.[4]

## CONCLUSION

The lower court did not err in refusing to grant a restraining order regarding the use of the Shapemasters' name and logo. Further, the appointment of a custodian is interlocutory in nature and does not fall into a delineated exception. As such, the trial court's rulings are

**AFFIRMED IN PART; DISMISSED IN PART; AND REMANDED.**

HEARN, C.J., and ANDERSON, J., concur.

---

4. It is not necessary for this court to address Appellants' remaining issues because Appellants fail to provide legal authority to support their arguments. *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (holding when a party fails to provide arguments or supporting authority for his assertion, the party is deemed to have abandoned the issue). Moreover, Appellant's remaining issues are without merit.