**In re COBB & LAWLESS KITCHENS, INC., Debtor.**

**Fred ZIMMERMAN, Trustee, Plaintiff,**

v.

**CDM PROPERTIES, INC. and John R. Arndt, Prothonotary of Berks County, Pennsylvania and United States of America, Defendants.**

Bankruptcy No. 81–04666G.
Adv. No. 85–0375G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 16, 1986.

Donald M. Collins, David C. Corujo, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for trustee, Fred Zimmerman.

Kurt Althouse, Bingaman, Hess, Coblentz & Bell, Reading, Pa., for John R. Arndt, Prothonotary of Berks County.

Virginia R. Powel, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

Fred Zimmerman, Pennsauken, N.J., trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The proposition advanced under the trustee's complaint, is whether the Internal Revenue Service ("the IRS") may levy, though not seize, the debtor's interest in property held *in custodia legis* by a clerk of a state court. On the basis of the reasons outlined below, we conclude that the levy was effective and we will direct the

prothonotary of the state court to disburse the funds to the IRS.

The facts of this case are as follows:[1] A contractor, CDM Properties, Inc. ("CDM"), contracted in 1980 with a subcontractor ("the debtor") for the repair and alteration of certain improvements to realty owned by CDM in Berks County, Pennsylvania. The work was completed but the debtor was not paid the contract price. Hence, it filed a Notice of Mechanic's Lien in the Berks County Court. CDM later wished to sell the property at issue and had the lien released pursuant to an order of the Berks County Court on CDM's deposit into court of an amount equal to the sum in dispute which is now $10,230.61. The IRS later filed a notice of levy in the Berks County Court against the debtor for an amount in excess of the fund. Thereafter, the debtor filed a petition for relief under chapter 7 of the Bankruptcy Code ("the Code") and we appointed a trustee to administer the bankruptcy.

The trustee filed the instant action against CDM, the prothonotary (the clerk) of the Berks County Court and the United States claiming, its entitlement to the funds on deposit in the state court. The trustee asserts that the funds at issue are held by the state court *in custodia legis* and in that status the funds are not subject to attachment or levy, such as that asserted by the IRS. CDM failed to respond to the trustee's complaint and a judgment by default has been entered against it. The prothonotary duly responded to the complaint and stated he was merely a stakeholder seeking court direction for the disbursement of the funds.

■ The first pertinent statutory provision to our discussion is the automatic stay created by the Code, which arises on the filing of a petition in bankruptcy. 11 U.S.C. § 362(a). Section 362(a)(4) provides that the automatic stay bars "any act to create, perfect, or enforce any lien against property of the estate." Thus, while

CDM's default under the complaint before us served to vest the trustee with title to the fund, this act occurred postpetition and therefore, under § 362(a)(4), the IRS lien could not then attach to the trustee's interest in the property. The question is whether the IRS possessed a lien prior to the filing of the petition which could attach to the debtor's interest in the funds *in custodia legis* although the debtor's title to those funds was not then legally established.

■ The second relevant statutory pronouncement is 26 U.S.C. § 6321 on which the IRS predicates its lien:

§ 6321. Lien for taxes

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. The Supreme Court has recently construed this provision:

The statutory language "all property and rights to property," appearing in § 6321 (and, as well, in §§ 6331(a) and 6332(a), see nn. 1 and 2, *supra*), is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have. See 4 B. Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 111.5k. 4, p. 111–100 (1981) (Bittker). "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank v. United States*, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945).

*United States v. National Bank of Commerce*, —— U.S. ——, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). In applying a stat-

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

ute such as § 6321 the Supreme Court has stated:

"[I]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property." *Aquilino v. United States*, 363 U.S. 509, 513 [80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365], (1960), quoting *Morgan v. Commissioner*, 309 U.S. 78, 82 [60 S.Ct. 424, 426, 84 L.Ed. 585] (1940). See also *Sterling National Bank*, 494 F.2d, at 921. This follows from the fact that the federal statute "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Bess*, 357 U.S. 51, 55 [, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135] (1958). And those consequences are "a matter left to federal law." *United States v. Rodgers*, 461 U.S. [677] at 683 [103 S.Ct. 2132 at 2137]. "[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative," and the tax consequences thenceforth are dictated by federal law. *United States v. Bess*, 357 U.S., at 56–57 [78 S.Ct. at 1057–58].

*United States v. National Bank of Commerce*, 105 S.Ct. at 2925–26 (some cites omitted). Thus, once it is determined that state law creates some interest in property, the focus shifts to federal law for a resolution of whether a federal tax lien will attach to that property. Although state law may bar the attachment of certain property interests arising under the law of that state, that determination is not preclusive of whether a federal tax lien will attach to that property interest. *United States v. National Bank of Commerce*, 105 S.Ct. at 2926–27 and 2926 n. 8.

As applied to the case before us, the language of § 6321 and the Supreme Court's construction of the language in *United States v. National Bank of Commerce* suggests that the debtor's interest in the fund at issue was subject to levy prior to the filing of the petition for bankruptcy in the absence of countervailing au-

thority. The trustee contends that the doctrine of *custodia legis* is such authority.

On the issue of property *in custodia legis*,—literally meaning property in the custody of court,—the Supreme Court has stated:

The general doctrine that property in the possession of a receiver appointed by a court is *in custodia legis*, and ` that unauthorized interference with such possession is punishable as a contempt, is conceded; but it is contended that this salutary rule has no application to the collection of taxes. *Undoubtedly property so situated is not thereby rendered exempt from the imposition of taxes by the government within whose jurisdiction the property is, and the lien for taxes is superior to all other liens whatsoever, except judicial costs, when the property is rightfully in the custody of the law, but this does not justify a physical invasion of such custody and a wanton disregard of the orders of the court in respect of it.* The maintenance of the system of checks and balances characteristic of republican institutions requires the coordinate departments of government, whether federal or state, to refrain from any infringement of the independence of each other, and the possession of property by the judicial department cannot be arbitrarily encroached upon, save in violation of this fundamental principle.

*In Re Tyler*, 149 U.S. 164, 182–83, 13 S.Ct. 785, 796, 37 L.Ed. 689 (1893) (emphasis added). In *Tyler* the Supreme Court professed a dichotomy between the actual seizure of property *in custodia legis* and the attachment by a creditor of an *interest in property* held by a party in interest to the property held by the court. *Tyler*, 149 U.S. at 182–83, 13 S.Ct. at 789–90; *Maxwell v. California*, 341 F.2d 235, 237–38 (9th Cir. 1965). Some courts, not sufficiently sensitive to this dichotomy, have used the terms "attachment" and "seizure" interchangeably, while nonetheless, holding that the IRS had priority on its tax claim over a taxpayer who possessed an interest in property held *in custodia legis*. *In re*

*Quakertown Shopping Center, Inc.,* 366 F.2d 95 (3d Cir.1966). Without recognizing this concept some courts have predicated their just and proper decisions on what we perceive is a spurious distinction holding that "when authority for the law's custody [of property *in custodia legis* ] and for the Internal Revenue's levy derive from the same source, with no potential clash between jurisdictions, the doctrine against attachment does not prevail." *B & G Limited v. Levin* (In Re Meter Maid Ind.), 462 F.2d 436, 438 (5th Cir.1972); *In Re Quakertown Shopping Center, Inc.,* 366 F.2d 95 (3d Cir.1966).

Under the bifurcation between seizure and attachment, state law may provide that property in custody of the court is neither subject to attachment nor seizure, and, as amply illuminated by the trustee's research, such is the law in Pennsylvania which is the situs of the fund. Nonetheless, we reiterate that the federal government is not bound by the state law restriction that bars attachment of a debtor's interest in property held *in custodia legis.*

■ We hold that the doctrine of *in custodia legis* did not preclude the attachment of the debtor interest in the court fund and in light of the breadth of 26 U.S.C. § 6321 we conclude that the IRS tax lien attached at the time of the assessment which was prior to the filing of the petition. We will enter an order directing the prothonotary to deliver the fund of $10,230.61 to the Internal Revenue Service.