**In re Reuben SCHERBENSKE and Iola Scherbenske, Debtors.**

**Gary E. CAMERON, Trustee, Plaintiff,**

**v.**

**INTERNAL REVENUE SERVICE OF the UNITED STATES of America and First Bank North Dakota, N.A. Jamestown, Defendants.**

**Bankruptcy No. 85–05190.**
**Adv. No. 86–7100.**

United States Bankruptcy Court,
D. North Dakota.

March 2, 1987.

Jay C. Carlson, Fargo, N.D., for trustee.

Amy J. Sargent, Tax Div., Washington, D.C., Rodney S. Webb, U.S. Atty., Fargo, N.D., for I.R.S.

Max D. Rosenberg, Bismarck, N.D., for First Bank.

William P. Westphal, Minneapolis, Minn., U.S. Trustee.

## MEMORANDUM OPINION

WILLIAM A. HILL, Bankruptcy Judge.

The instant adversary case was commenced by the trustee seeking a determination of the validity and priority of liens claimed by First Bank North Dakota, N.A.-Jamestown (Bank) and the Internal Revenue Service of the United States of America (IRS) in $87,144.28 representing proceeds stemming from the sale of real property by Reuben and Iola Scherbenske (Debtors) to purchasers under a contract for deed. The trustee also seeks to avoid the claims of the Bank under section 547 and suggests that as hypothetical lien creditor he may have an interest superior to that of the IRS by virtue of section 544.

The IRS claims an interest in the proceeds by virtue of several notices of federal tax lien and the Bank claims and interest by virtue of a judgment levy. The matter came on for hearing on January 22, 1987.

### Findings of Fact

The Debtors filed a petition under Chapter 7 of the Bankruptcy Code on April 5, 1985. Included in the property coming into their estate was a vendor's interest in a contract for deed entered into on July 31, 1979, by which they sold "Lots 3, 4, 5 and 6, Block 10, Original Plat, City of Jamestown, Stutsman County, North Dakota" to James and Marjorie Newman. On January 27, 1986, the trustee filed a motion for leave to perform on the contract by conveying a warranty deed to the purchasers free and clear of liens. The Bank, while claiming an interest in the proceeds, stipulated to the sale and pursuant thereto, this court entered an Order on March 21, 1986, pursuant to section 363(b), (f) of the Bankruptcy Code, allowing the conveyance providing the proceeds were placed in an escrow pending determination of who might be entitled to them. The liens of creditors attached to the proceeds in accordance with their legal priority. The trustee retains in his possession sale proceeds of $87,144.28 which are the subject of this action.

On June 26, 1984, the Bank obtained judgment against the Debtors in the sum of $353,796.30 plus interest. A writ of execution was issued by the District Court for Stutsman County and pursuant thereto the sheriff of Stutsman County filed a Sheriff's Notice of Levy on February 14, 1985, against all of the Debtors' right, title and interest in and to the real property previously described herein. The Bank, in

consequence of its claim, moved for relief from stay in bankruptcy court on October 15, 1985. Although noticed to the United States Trustee, the Chapter 7 trustee, as well as the Debtors' attorney, the motion was not served upon the IRS, the United States Attorney, or the United States Attorney General. No objections were filed and on December 2, 1985, this court entered an order granting the Bank relief from stay.

On August 27, 1984, the IRS filed a Notice of Federal Tax Lien against Reuben Scherbenske for a section 6672 assessment in the amount of $276,594.33. On the same date it filed a Notice of Federal Tax Lien against Iola Scherbenske in the amount of $250,015.55 also in consequence of a section 6672 assessment.[1] Both notices were duly filed in the Office of the Register of Deeds for Stutsman County, North Dakota, the Debtors' county of residence and the county were the property is located.

The IRS filed a Proof of Claim in this case on November 20, 1986, in the sum of $231,358.53, amending an earlier Proof of Claim filed on October 10, 1985, in the sum of $674,884.78. The Debtors have not objected to the Proof of Claim and in their bankruptcy schedules listed the sum of $276,000.00 as due and owing the IRS for payroll taxes.

In an amended summary of debts and property, the Debtors set out debts totalling $3,457,323.00 and assets totalling $881,290.00. Secured debt totals $580,500.00 and unsecured debt totals $2,600,823.00. The Chapter 7 estate is no longer possessed of real property. According to the trustee, the only property existing after recognition of secured creditors' claims is about $103,000.00 in cash. No other property remains to be liquidated. The Debtors were granted a discharge on October 2, 1985.

*Conclusions of Law*

1.

A threshold issue is whether this court, in view of previously granting the Bank relief from stay against the property in question, has jurisdiction to determine the issues now before it. The IRS asserts that because it did not receive notice of the Bank's October, 1986, motion for relief from stay, the subsequent order is procedurally infirm and should be vacated. Motions for relief from stay being in the nature of contested matters must be served upon the party against whom relief is sought in conformity with Bankruptcy Rule 7004. Service was made upon the United States Trustee and the standing trustee, but was not made upon the IRS, a government agency. The IRS, while being a lienholder of record, was not a party in interest to the motion for relief from stay by which the Bank sought only relief from the automatic stay, relief which, if granted, would do nothing more than to return the parties to whatever legal relationships existed before commencement of the bankruptcy case. *Matter of Winslow*, 39 B.R. 869 (Bankr.N.D.Ga.1984). The claim of the IRS premised upon 26 U.S.C. § 6321 is unaffected by the granting of relief from stay to a competing lien holder because it would retain exactly the same legal characteristic it had prior to the stay being lifted. This is a situation quite different from those where a debtor or creditors' committee has filed an objection in bankruptcy court to an IRS Proof of Claim. In such situations the IRS and other lien holders are parties in interest because their interest would be affected by the ruling. It is also unnecessary to serve a debtor in a Chapter 7 motion for relief from stay because the trustee accedes to all the debtor's interests and becomes the real party in interest. The trustee himself should not be heard to complain, for he was served with the motion as was the United States Trustee. Rule 7004 does not require that the attorney for the trustee be served as well. Accordingly, this court concludes that the motion for relief from stay and its resultant order for relief from stay were not procedurally infirm.

---

**1.** 26 U.S.C. § 6672 provides that any person required to collect, account for and pay over any tax and who willfully fails to do so becomes liable to a penalty equal to the unpaid tax.

Were the trustee by the present adversary action simply asking this court to resolve an issue of priorities between competing lien claimants, this court would conclude it was without jurisdiction because the relief from stay does nothing to establish the creditor's interest in the collateral, a matter which would appropriately lie within the jurisdiction of other courts. However, property of the bankruptcy estate is intended to include property made available by the exercise of the trustee's avoiding powers. *See In re Independent Clearing House Co.*, 41 B.R. 985 (Bankr.D. Utah 1984). Relief from stay does not operate to deny a trustee the right to recover preferential transfers or avoid unperfected interests in property. A bankruptcy court continues to retain jurisdiction necessary to entertain causes of action arising out of the avoidance powers given to a Chapter 7 trustee under sections 544 and 547. Inherent in resolving the avoidance issue is the necessity of determining the nature and validity of the IRS lien as well as that of the Bank. Accordingly, this court concludes it does have jurisdiction to resolve the instant action.

2.

■ Armed with the status of a hypothetical lien creditor, the trustee may, under section 544, avoid a security interest which was unperfected as of the date of bankruptcy filing. *In re Galvin*, 46 B.R. 12 (Bankr.D.N.D.1986). Central to the trustee's claim is the status of the IRS claim as of April 5, 1985, the date of filing. Although the two IRS notices of Federal Tax Lien had been filed on August 27, 1984, the trustee argues they were unperfected because the Debtors' interest in the contract for deed is personal and perfection of the IRS's interest could only occur by levy. This argument does not square with applicable law. In bankruptcy cases, state law determines a debtor's interest in property and normally also controls the priority of competing liens. *In re Glinz*, 46 B.R. 266 (Bankr.D.N.D.1984). However, where the lien claimant is the IRS, it is not state law but federal law that controls the issue of attachment and perfection. *U.S. v. City of New Britian*, 347 U.S. 81, 74 S.Ct. 367,

98 L.Ed. 520 (1954); *In re Cobb & Lawless Kitchens, Inc.*, 56 B.R. 701 (Bankr.E.D.Pa. 1986). Both the IRS and the trustee agree that a vendor's interest in a contract for deed is personal in nature. The trustee argues that as against personalty, perfection of an IRS tax lien cannot occur until it actually attempts to enforce its lien by sale.

■ 26 U.S.C. § 6321 creating a federal lien for taxes, provides that the lien thus created is a lien upon "all property and rights to property, whether real or personal, belonging to such person." Once it is established under state law that the person against whom a tax assessment is sought has some type of interest in property, it matters not for federal tax purposes how that interest is characterized under state law. Section 6321 is broad and is meant to reach every interest of whatever kind a taxpayer might have. *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945). Thus, as to the issue of attachment of the IRS lien, it makes no difference whether the Debtors' interest is real or personal as far as perfection is concerned nor does it matter what the effect under state law might be in a non-federal situation. The lien imposed by section 6321 arises at the time the assessment is made and continues until satisfied. It becomes perfected and secured upon filing of a notice of lien in accordance with 26 U.S.C. § 6323(f). *In re Barnett*, 62 B.R. 638 (Bankr.D.Md.1986). This section provides that once notice has been filed it is valid as against any purchaser, holder of a security interest, mechanic's lienor or *judgment lien creditor*. The suggestion that there is something more the IRS should have done to perfect its lien is without merit. The Supreme Court has held that while liens may be perfected by attaching to specific property, they may also be perfected in the sense that there is nothing more to do—when the identity of the lessor, lienor, the property subject to the lien and the amount of the lien are established. Federal tax liens are

of this latter type and are perfected by the filing of a Notice of Federal Tax Lien. *United States v. Vermont*, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1963). Accordingly, it is the opinion of this court that the tax lien of the United States was perfected against the Debtors' vendor's interest as of August 21, 1984, and as a consequence it is perfected against the trustee whose status as a judgment creditor did not come into existence until April 5, 1985.

### 3.

Having determined that the IRS has priority as against the trustee we now turn to deciding whether the trustee can yet maintain a preference claim against the Bank under section 547. The priority issue will become moot if the IRS's lien also has priority over that of the Bank; irrespective of whether the Bank's judicial lien might otherwise constitute a preference, the property would remain subject to the paramount claim of the IRS to the exclusion of the trustee and since the IRS would also have priority over the Bank, it would be entitled to the sale proceeds. Thus, there would be nothing available for the trustee to recover even if successful on the section 547 action.

The priority of competing interests of the IRS and the Bank must be resolved by again resorting to federal law. The IRS's lien as noted previously became perfected as of August 27, 1984, as against the claim of any "judicial lien creditor," defined for purposes of section 623 as:

"[A] person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established. Accordingly, a judgment lien does not include an attachment or garnishment lien until the lien has ripened into judgment, even

though under local law the lien of the judgment relates back to an earlier date. If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing. If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved.

26 C.F.R. § 301.6323.

The Bank charges that its lien attached to the Debtors' vendor's interest as of June 26, 1984, the date judgment was entered. The IRS, on the other hand, says that no attachment occurred and therefore no perfection occurred until the February 15, 1985, sheriff's levy.

The Bank in its brief makes reference to standard 10.06 of the North Dakota Standards of Title as authority for its position that a vendor holds bare legal title in trust for the purchaser. This is a correct statement of the law and has been recognized by this court. *In re Faiman*, 70 B.R. 74, 76 (Bankr.D.N.D.1987); *In re Flaten*, 50 B.R. 186 (Bankr.N.D.1985). *See also Zent v. Zent*, 281 N.W.2d 41 (N.D.1979). This very title standard is also, however, the petard by which the Bank's argument fails. The Bank suggests that the import of this standard and the cases upon which it is based is that a vendor retains an interest in the real property and it is that interest against which the judgment lien attached by the June, 1984, filing. The title standard, however, goes on to say that no judgment lien attaches to the vendor's interest in the property except to the extent of the unpaid purchase price, which the judgment creditor must take affirmative action in the form of a levy to protect. Although standard 10.06 cannot be regarded as primary authority, it nonetheless does suggest that in North Dakota a vendor's interest is personal in nature. Nonetheless, the Bank

argues that the vendor's interest is real in nature and that by virtue of North Dakota Century Code § 28–20–13[2] its judgment attached to that interest as of June, 1984, filing date. The Bank is correct only if the vendor's interest is truly real in nature. It has long been recognized in North Dakota that execution of a contract for deed works as an equitable conversion—a sometimes amorphous concept, whereby two estates exist side by side, one equitable and one legal. The purchaser at the time of the agreement becomes in equity the fee owner of the property subject only to a vendor's lien for payment of the contract price. *Zent v. Zent, supra.* The vendor, while retaining legal title, retains such title only in trust for the purchaser. His interest in the property itself is really as security for payment of the purchase price and his only remaining right is to the balance due for which he holds the title as security. *Semmler v. Beulah Coal Mining Co.*, 188 N.W. 310 (N.D.1922). In this respect it is said that the vendor's rights are the same as if he had conveyed by warranty deed and taken back a mortgage—his interest being equivalent to that of a mortgagee. *Mueller v. Novelty Dye Works*, 273 Wis. 501, 78 N.W.2d 881 (1956). The effect is to "convert" the purchaser's interest into realty and the vendor's interest into personalty. 77 Am.Jur.2d *Vendor's and Purchasers* §§ 316, 317. *See also Ohio Casualty Insurance Co. v. Holz & Holz, Inc.*, 24 Wis.2d 587, 129 N.W.2d 330 (1964). Section 28–20–13 is effective only as against interests in real property. It does not speak to vendor's interests. When the Bank's judgment was filed in June, 1984, the property subject to the contract for deed was no longer real property belonging to the Scherbenske's within the meaning of section 28–20–13. By that time their only interest was a vendor's interest—personal in nature which, as clearly expressed in Title Standard 10.06, is perfected only by levy. Execution and levy did not occur until February 14, 1985, and the Bank's judgment lien was not perfected within the meaning of 28 C.F.R. § 301.6323(H)–1(g)

until that time. Thus, according to the federal law pertaining to priorities, the Bank as judgment lien creditor was unperfected as against the lien of the IRS which was perfected on August 24, 1984.

The IRS is entitled to priority as a secured creditor over the interests of the trustee as well as the Bank. Having reached this conclusion, it is not necessary to address whether the Bank's June, 1984, judgment constitutes a preferential transfer under section 547.

Accordingly, and for the reasons stated, judgment may be entered in favor of the Internal Revenue Service of the United States of America. The sum of $87,144.28 representing the contract for deed proceeds shall be distributed to the IRS consistent with section 506 of the Bankruptcy Code.

SO ORDERED.

---

**2.** N.D.C.C. § 28–20–13 provides that upon filing of a judgment it becomes a lien on all the real property of every person against whom the judgment is rendered.